Katherine H. Murphy, Appellant, v. Benjamin E. Sincere and Thomas E. Hosty, Trading as Charles Sincere & Company, Appellees.

Gen. No. 40,385.

Opinion filed April 24, 1939.

DENIS E. SULLIVAN, JR. and EDMOND SULLIVAN, both of Chicago, for appellant; EDMOND SULLIVAN, of counsel.

MARSHALL & MARSHALL, of Chicago, for appellees; FRANK G. MARSHALL, of counsel.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff as the owner of certain bank stock suffered a stockholder's liability; she sought to recover from defendants, who she says were the actual owners of the stock at the time when her liability accrued, $3,500 she had paid on account. The case was tried by the court upon a stipulation of facts; the court found for defendants and judgment was rendered against plain-

tiff, from which she appeals. Defendants say they were merely agents, acting for other parties and not for themselves.

October 1, 1931, plaintiff became owner of 30 shares of capital stock of the Central Republic Bank and Trust Company; these shares were represented by stock certificate No. F-6222 and were registered in her name on the books of the bank; shortly before June 28, 1932, she placed in the hands of Rogers & Tracy, her brokers, this certificate to be offered for sale; they notified her that her stock could be sold for $9 a share and she ordered them to accept this bid.

Defendants are brokers dealing in stocks; among their regular customers were H. C. Dubay and Lillian Park. June 28, 1932, Dubay requested defendants to purchase 25 shares of Central Republic Bank and Trust Company stock for him; defendants learned from Rogers & Tracy that this bank stock could be purchased and Dubay was notified that 25 shares could be purchased at a net cost to him of $9.50 a share; he requested that these shares be bought at this price and on the same day, June 28, 1932, they were purchased through Rogers & Tracy.

On the same day Lillian Park made known to defendants that she wished to purchase 10 shares of stock of the Central Republic Bank and Trust Company; this was communicated to plaintiff's brokers, Rogers & Tracy, and defendants were advised that they had five shares of this stock available at $9 a share; defendants notified Lillian Park that these five shares could be purchased for $10 a share net, and that the other five shares could be obtained from other brokers; she requested defendants to purchase the five shares from Rogers & Tracy, which was done. On the same day defendants made entries in their books showing these sales to Dubay and Park and on the same day written confirmation of them was made to Dubay and Park. On this day, June 28, 1932, no other Central

Republic Bank and Trust Company stock was purchased or sold by or through defendants except a purchase of two shares at the direction of another customer.

The following day, June 29, 1932, Rogers & Tracy delivered to defendants certificate No. F-6222 representing the 25 shares of stock purchased by defendants for Dubay and the five shares for Park; these were placed by defendants in what is called the customers' box to await further instructions from Dubay and Park. The records show the specific purchases by Dubay and Park with the specific stock certificates delivered by plaintiff's brokers, Rogers & Tracy, to defendants pursuant to the purchase made by Dubay and Park; no other stock of the bank was held by defendants which could be confused with these transactions. These shares remained in defendants' box until July 20, 1932, when Lillian Park requested that her shares be delivered to other brokers in exchange for other shares, which was done. August 8, 1932, Dubay requested defendants to sell his 25 shares, which was done. The records of these sales were duly entered upon the respective accounts of Dubay and Park.

The decree in the stockholders liability case found that plaintiff was the registered owner of the stock in question on June 29, 1932.

The general rule is that title to stock passes directly to the customer on a purchase by his broker for the customer's account, and this is true even though the broker retains possession of the stock certificate. *Hobart v. Vanden Bosch,* 256 Mich. 686, 691; *Englehart v. Cassatt,* 305 Pa. 117, 124; *Allen v. Williams,* 212 Ill. App. 114. No question is involved as to whether defendants had a lien upon this stock for any unpaid balance due from Dubay and Park. They had been customers of defendants for a considerable time prior

to the instant transaction, and had accounts on the books of defendants.

Plaintiff argues earnestly that the fact defendants increased the price of 25 shares of the stock from $9 to $9.50, and of the five shares sold to Park from $9 to $10 a share indicates they were buying on their own account and not as brokers charging a commission for their services, citing *Broderick v. Aaron,* 264 N. Y. 368. In that case the holders of bank stock sold it to Rice & Co., dealers in securities, at a certain price, who within a minute thereafter agreed to sell the same stock to another party at an advanced price; an action was brought against the stockholders of record to enforce their statutory liability and they impleaded the members of the brokerage firm on the ground that they were the buyers and would be liable to the stockholders of record for the claim made against them; the court held that the brokers should be dismissed from the cause, holding that a broker who purchases stock is under no obligation to indemnify the seller for charges imposed after the broker sells the stock to a third party. In *Toombs v. Lewis,* 362 Ill. 181, a broker was instructed to sell shares at $38 a share; he sold at $38.50, retained the difference and also charged a commission; it was held that the retention of this difference did not convert the relationship of principal and agent into one of seller and purchaser. See also *Johnson v. Winslow,* 279 N. Y. Supp. 147, and *McNulty v. Whitney,* 273 Mass. 494.

We do not see how it could be successfully maintained that defendants bought the stock for themselves. Their long continued dealings with Dubay and Park would indicate to the contrary. Plaintiff says that the mere fact that the physical possession of the shares remained in defendants' customers' box deprives Dubay and Park of ownership. This stock had been purchased under instructions from them and they had

been duly notified that this had been done. If they chose to leave to defendants physical possession of the certificates, that was their affair and no convincing statements or decisions can be adduced to show that this fact deprived them of the ownership.

Plaintiff relies largely on the decision in *Broderick v. Alexander*, 268 N. Y. 306, where brokers were held liable to indemnify plaintiff for damages he suffered under the stockholders liability law. The court, however, was particular to point out the difference between the facts in that case and the facts in *Broderick v. Aaron, supra*. The opinion points out that the brokers in the *Alexander* case cannot claim the benefit of the decision in the *Aaron* case, as in the former case the brokers on the same day they purchased the stock from the record holder also purchased other large blocks of stock of the same bank and sold large blocks of the stock, and at the time the bank closed had not passed title to the stock they bought to any purchaser and could not identify any particular purchase of stock with any sale of stock made on that day. Defendants here never purchased large blocks of the stock in question or any stock for themselves; and the specific stock purchased by them for Dubay and Park was the specific stock delivered to them for the account of and the benefit of the owners, Dubay and Park.

In *Schless v. Burley*, 295 N. Y. Supp. 707, cited by plaintiff in her reply brief, the plaintiff ordered her brokers to sell 10 shares of bank stock; they offered to sell these to Burley & Co., brokers dealing in stocks; before accepting this offer and while plaintiff's brokers were still on the telephone, Burley & Co. offered to other brokers these shares at an eighth of a point higher, and upon the latter's acceptance Burley & Co. purchased the shares from plaintiff's brokers. Burley & Co. were held to be purchasers and bound to indemnify the plaintiff on account of her stock liability.

The fundamental difference between this and the other cases cited by plaintiff and the instant case is that in those cases the purchases were clearly made by the brokers themselves for their own profit, while in the instant case the defendants were acting pursuant to specific orders from their regular customers. During all the transactions, from the time they received instructions from Dubay and Park to buy these specific shares for them and the final disposition of these shares as ordered by these customers, defendants were acting as agents for their principals.

We are of the opinion the trial court decided rightly for the defendants and its judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.