(No. 29143.— )

HARRIS TRUST AND SAVINGS BANK *et al.,* Trustees, Appellees, *vs.* HARRY C. WANNER *et al.*—(HARRY C. WANNER, Appellant.)

*Opinion filed May 21, 1946.*

Joseph .E. Bell, and Jesse H. Brown, both of Chicago, for appellant.

Chapman & Cutler, (Dayton Ogden, and Ralph F. Huck, of counsel,) all of Chicago, for appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellant, individually and as executor of the will of Ruth Hunter Wanner, deceased, has appealed, on leave granted, from the judgment of the Appellate Court for the First District affirming the decree of the superior court of Cook county which approved appellees' report as trustees of a certain trust hereinafter mentioned, allowing fees and terminating said trust.

Appellees, Harris Trust and Savings Bank and Franklin J. Stransky, as trustees of what is known in the record as Temporary Trust No. 5197, executed June 26, 1931, under a certain trust agreement hereinafter referred to, and the Harris Trust and Savings Bank as trustee under

three certain testamentary trusts set up under the will of
Ruth Hunter Wanner, deceased, and as successor trustee
of a fourth testamentary trust also set up under that will,
filed a complaint in equity praying for the termination of
Temporary Trust No. 5197 and seeking approval of the
trustees' account and for instructions as to disposition of
funds and assets in the trust.

Appellant, Harry C. Wanner, settlor of Temporary
Trust No. 5197, filed an answer individually and as ex-
ecutor of his mother's will, in which he alleged that trust
No. 5197 should not be terminated but that the trustees
thereof should be surcharged $25,756.31 wrongfully paid
to the beneficiaries of the testamentary trusts referred to,
whereas such funds should have been paid to themselves as
temporary trustees. His answer also prayed that the trus-
tees be discharged.

A hearing was had before the chancellor and on un-
disputed documentary and oral evidence a decree was en-
tered in accordance with the prayer of the complaint. This
decree approved the account of the trustees, allowed fees
to them and to their attorneys, directed a sale of certain
assets, decreed the distribution of the cash balance of the
temporary trust to the testamentary trustees and ordered the
temporary trustees to convey a certain apartment building
located at 5442 Hyde Park Blvd., in Chicago, to Harris
Trust and Savings Bank, trustee and successor trustee of
the trusts created under the will of Ruth Hunter Wanner.
Wanner appealed to the Appellate Court, where the de-
cree was affirmed.

Ruth Hunter Wanner died testate November 21, 1928.
By paragraph 2 of her will she gave to her son, appellant
Harry C. Wanner, as trustee, $50,000, to be held in trust
for her granddaughter Janet Wanner, now Martin, daugh-
ter of appellant, the income of this trust fund to be paid
to her semiannually for life, and upon her death the
*corpus* to go to Janet's heirs. By paragraph 4 she created

three other trusts of $25,000 each and nominated Harris Trust and Savings Bank as trustee of these trusts, the income to be paid semiannually to her nieces Laura Hunter, Edna Hunter Reist, later Bachelle, and Bessie Hunter Hayes during their lives, the *corpus* of these trusts to go, upon the death of the respective nieces, to the appellant, Harry C. Wanner. Wanner was appointed executor of the will, without bond, and was directed to fund these four trusts. He inventoried real and personal property valued in excess of $200,000. Specific legacies bequeathed by the will were paid by him but he failed and refused to fund the four trusts as directed by the will.

Early in 1929, the Harris Trust and Savings Bank, trustee for the three trusts for the benefit of the nieces, made demand upon Wanner, as executor, to fund the trusts. This demand was frequently repeated without result, and on June 26, 1931, Wanner, asserting that he was unable to establish the trusts, executed the trust herein designated as Temporary Trust No. 5197. He also resigned as testamentary trustee in the $50,000 trust created for his daughter Janet and the Harris Trust and Savings Bank was appointed successor trustee of that trust. Thereafter he conveyed to the Harris Trust and Savings Bank and Franklin J. Stransky, as trustees of Temporary Trust No. 5197, the apartment building at 5442 Hyde Park Blvd., referred to, several other parcels of real estate, and various securities, some of which items belonged to him personally. The temporary trustees were able to liquidate that property, except the apartment building, for a total of approximately $12,000. None of the numerous securities inventoried by Wanner as executor as good securities, including government bonds, were transferred by him as executor to trust No. 5197. The purpose of Temporary Trust No. 5197, as shown by its terms, was to enable the temporary trustees to fund the various testamentary trusts as soon as possible without great loss, which would, under the then market

conditions, result, if the property were at that time converted into cash.

The sections of the trust agreement governing a determination of the issues here are sections 2, 8, 9, 13 and 14. By section 2 the interest retained by the settlor in the trust property is declared to consist solely of the right to receive the proceeds from the property in the hands of the temporary trustees, remaining after the funding of these trusts. Such proceeds were deemed to be personal property, and in the case of the death of the settlor during the existence of the trust his right and interest in the trust property, except as otherwise provided in the agreement, was to pass to his executors and administrators and not to his heirs-at-law; that the *cestuis* of the various trusts were to have "only an interest in the property and avails thereof," it being the purpose of the trust instrument to vest full legal and equitable title to the property in the temporary trustees.

By section 8 the trustees were to have no duties in respect to the management and control of the estate, or selling, renting or handling thereof, but the settlor was to have full and complete management and control of the real estate and to collect and to retain to himself the rents or income of the real estate, and he, on the other hand, was to pay to the temporary trustees an amount sufficient to pay an income at the rate of six per cent per annum on the four trusts created by the will, the *corpus* of which amounted to $125,000. This section was made subject to the provisions of section 14 of the trust agreement hereinafter referred to.

By section 9 all cash realized upon the sale, maturity or other liquidation of the real estate and/or securities was to be paid directly to the temporary trustees, and they, out of such proceeds, were to pay the settlor the reasonable expenses incurred by him in selling the property, also any amount which he may have expended in excess of

rentals or other income received by him therefrom. The temporary trustees were further directed to pay the settlor, out of the proceeds of the sale or liquidation of the real estate or securities, except the securities of the Wanner Malleable Castings Company, 25 per cent of the net proceeds of such sale, as compensation for his services. The limitation upon his compensation was placed at $10,000 in any one year. The temporary trustees were not required to pay taxes, assessments, cost of repairs or other expenses charged against the real estate.

Section 13 provided, in effect, that when the trustees for the four trusts received for each trust the full amount as created by the will, and expenses, the temporary trust shall terminate, and whatever assets remained in the hands of the temporary trustees should be returned to the settlor.

Section 14 is as follows: "If the Trustee for Edna Hunter Reist, Laura Hunter and Bessie Hunter Hayes and/or the Trustee for Janet Wanner shall not have received the full amount to which they are entitled under Section Thirteen hereof, on or before September 1, 1932, the rights and powers hereinbefore given and granted to the Settlor in Sections Seven and Eight hereof, thereupon shall cease and determine, and the Temporary Trustees thereafter shall be vested with full right, power and authority to exchange, lease, mortgage, sell and convey the said real estate and securities or any part thereof, upon and subject to such terms and conditions as they, in their absolute and uncontrolled discretion, shall deem necessary and proper to realize cash for the payment to the Trustee for Edna Hunter Reist, Laura Hunter and Bessie Hunter Hayes and to the Trustee for Janet Wanner of the sums to which they are entitled under the provisions of Section Thirteen hereof, and any action taken by the Temporary Trustees pursuant to the provisions of this Section shall not be subject to question or challenge by said Settlor, or his heirs, executors, administrators or assigns, and in such event, said

Settlor, his heirs, executors, administrators and assigns, shall have no right or interest hereunder, except to receive the proceeds and avails of the said real estate and securities, if any, remaining after the payment to the Trustee for Edna Hunter Reist, Laura Hunter and Bessie Hunter Hayes and to the Trustee for Janet Wanner of the full amount to which they are entitled under the provisions of Section Thirteen hereof."

Upon the execution of Temporary Trust No. 5197, the trustees set up a ledger and bank account for that trust and all monies received and paid out were passed through this account. It showed that for the period from June 26, 1931, the date of the creation of the temporary trust, to September 16, 1942, the trustees had received, as rents from the property at 5542 Hyde Park Blvd., the sum of $41,857.10, and from other sources, including certain dividends and cash proceeds of the sale of real estate and securities, the sum of $9,612.88, making a total received for the period of $51,469.98. Total disbursements, including the $25,756.31 income from the apartment building, paid to the beneficiaries of the four trusts, amounted to $43,399.48, leaving a balance of cash in that trust fund of $8,080.50. In addition to this cash balance the sole assets remaining in trust No. 5197, when the complaint was filed, were the apartment building at 5442 Hyde Park Blvd., valued at $27,500, and a note for $2625.37, a part of the purchase price of the Wanner Malleable Castings Company bonds. While the securities constituting the temporary trust at the time of its creation had a face value of $315,300, the temporary trustees were able to realize but $11,866.40 from them, and $216.85 for real estate other than the apartment building. The latter had not been sold at the time this complaint was filed.

No objection appears in the record as to the amount received for the securities except the Wanner Malleable Castings Company bonds which were sold a few weeks

before filing the complaint. As to this item Wanner contended that they should have gotten $14,000 for them, whereas they were sold for $10,125. This item will be referred to later.

In March, 1934, Wanner authorized the trustees to treat $1000 of the cash sum of $1985.25, the total cash at that time in the hands of the trustees, as accrued income, and directed the disbursement of that amount *pro rata* to the beneficiaries under the various testamentary trusts.

While numerous errors have been assigned, the principal contentions are: (1) That the trustees wrongfully paid $25,756.31 of the income of the apartment building to the beneficiaries of the testamentary trusts when they should have paid it to themselves for the purpose of funding the testatmentary trusts, and (2) that the trustees should be surcharged not only with that amount but with $3875 representing the difference between what they received for the Wanner Malleable Castings Company bonds and what they could have received. It is also contended that there is no justification for construing the trust instrument, as it is plain on its face.

The Appellate Court held that the rental income from the apartment building on Hyde Park boulevard was not covered by the general provisions of the trust and was not *corpus* of that trust and so could be paid directly to the beneficiaries in the discretion of the trustees. Appellant argues that this was error; that by the unambiguous provisions of the trust agreement the money coming into the hands of the temporary trustees was to go to establish the trusts created by the will and that it was error to hold, as did the trial and Appellate courts, that the circumstances of the beneficiaries of the testamentary trusts justified the temporary trustees in making distribution of this income. Appellant also argues that the trust cannot be terminated at the instance of the trustees. In support of these con-

tentions appellant insists that the Appellate Court erred in holding that the trust agreement was ambiguous, and, by construction, giving it a meaning other than the plain language of the agreement indicated.

The rule is, as contended by appellant, that a trustee is required to perform the trust he has undertaken in accordance with the provisions of the trust agreement, and the care and prudence to be exercised by such trustee are those which ordinary men would exercise under like circumstances in dealing with their own affairs. *Cowles* v. *Morris & Co.* 330 Ill. 11; *Wahl* v. *Schmidt,* 307 Ill. 331; *Wylie* v. *Bushnell,* 277 Ill. 484; *Kaufman* v. *Loomis,* 110 Ill. 617; 2 Perry on Trusts, 6th ed., sec. 914; 3 Pomeroy's Eq. Jur. 3d ed., 1070.

In the construction of a trust agreement it is always pertinent to consider the facts and circumstances which gave rise to its execution, together with the provisions of the instrument. Ruth Hunter Wanner, mother of appellant, died leaving an estate of a sound value of over $200,000. By her will she directed the creation of four trusts aggregating $125,000. She appointed her son, appellant, trustee of a $50,000 trust for her granddaughter, daughter of appellant, and directed the establishment of that trust and three trusts of $25,000 each and appointed Harris Trust and Savings Bank as trustee of those three trusts. She appointed appellant, Wanner, executor without bond and directed him to fund those trusts. There is no question but that the estate at the time of her decease was of sufficient value to have established all four trusts. Nor can it be questioned that it was the duty of the executor to have funded them, but this he did not do, and after repeated demands from the bank, as trustee of the three $25,000 trusts, he admitted his insolvency and inability to fund the trusts and conveyed two items of property of the Wanner estate and certain property of his own to the temporary trustees for the purpose of producing

an amount sufficient to establish the trusts. One of the questions here is whether the trust agreement shows an intention of the parties that the four trusts be funded from the income and proceeds of the trust *res* or to be funded solely from the proceeds of the sale of the *res*. It is not disputed that the intent was to fund these four trusts as soon as possible and to reconvey to the settlor any residue of the property conveyed in trust after the four trusts had been funded.

It will be seen that by section 8 of the trust agreement, which was made subject to the provisions of section 14, the temporary trustees, though the sole owners of the trust *res*, could deal with such trust *res* only when authorized to do so in writing by the settlor subject to approval of the trustees, and that the trustees should have no duties in respect to management and control of the real estate, and that the settlor could collect, receive and retain the rent and income, he in turn being charged with paying to the temporary trustees a sum sufficient to pay six per cent on the total amount of the trusts as income. This clearly indicates that, regardless of what securities or property constituted the *res* of the temporary trust, the collection of the income, including that of the apartment building in question, was charged with the payments due the beneficiaries under the testamentary trusts which the settlor should have established in his capacity as executor of his mother's estate. Evidently, from the record, this six per cent was never paid by him.

Section 14 provided that if the trustees for the temporary trust shall not have received, by September 1, 1932, the full amount required to fund the testamentary trusts, all rights and powers of the settlor were to cease and the testamentary trustees were to have full right, power and authority to exchange, lease, mortgage and convey all or any part of the trust *res* in their absolute and uncontrolled discretion to realize cash for setting up and funding the

four trusts. By operation of this section the means of paying the income of six per cent on the amount of the trust was removed from the settlor. Yet section 13 contemplates that before the trust shall be fully discharged and the settlor entitled to have anything returned to him, if any sum remains, the six per cent income on the four trusts shall be paid. It seem clear that sections 8 and 13 of the trust agreement required that the settler pay income amounting to six per cent of the amount of the trusts, to be paid in semiannual payments to the several beneficiaries under the testamentary trusts. The provision of section 14, taking control of the *res* from appellant, did not, in our opinion, however, change the terms or conditions of the trust as related to the duty to pay income therefrom to the beneficiaries of the testamentary trust, and we are of the opinion that appellant's contention that the net rentals from the Hyde Park boulevard property were to be retained by the temporary trustees for the purpose of funding the trust, with no payment of income to the beneficiaries, is contrary to the terms and intent of the trust agreement. That appellant considered this the correct construction is evidenced by the fact that from the time the trustees assumed the rental of the apartment building until the filing of the complaint in this case, appellant received from the trustees quarterly reports of receipts and expenditures which revealed to him that the trustees were paying the net rentals of the apartment building to the beneficiaries of the four trusts. During all that time no complaint was made by him but he acquiesced therein, and he cannot now be heard to say that such was not within the discretion of the temporary trustees.

Appellant's next contention is that the temporary trustees should be surcharged with the sum of $3875, which he contends they lost in the sale of the Wanner Malleable Castings Company bonds. The record shows that the temporary trustees received an offer of $10,125 from one

Lans, subject to certain conditions, the bid to be void if not accepted within the time specified. After the time expired, one Ellis made an offer of $10,125 without condition. His offer was accepted. Thereafter Lans made an offer of $14,000 subject to conditions. There is nothing in the record to show the actual value of the bonds. They were sold by the trustees on the highest and best bid received up to the time they were sold. There is no claim of irregularity in making sale. Appellant's contention cannot be sustained.

Appellant also urges that it was error to approve the decree regarding the distribution of the assets of the trust. He argues that the effect of the decree was to take from him property which, under the terms of the trust, was to be returned to him when the trust had been funded. This argument he applies particularly to the Hyde Park boulevard apartment building. The record is silent as to how he obtained title to the apartment building which he conveyed to the temporary trustees. It does show that this building was inventoried by him as executor of his mother's will as property in her estate. It was, therefore, property at least proper to be used to fund the four testamentary trusts. No value was placed on the building in the inventory. Appellant, as executor, listed in his inventory personal property, listed as good, aggregating $171,617. The legacies were approximately $18,000. This would leave $153,617 in good securities, aside from the apartment building. It was the intent of the will that all this property be used for the purpose of funding the four trusts. Yet in less than two years after the decease of Ruth Hunter Wanner appellant, as executor, was unable to fund the trusts, resigned as trustee of the $50,000 trust provided by the will for his daughter, and created the temporary trust for the purpose of funding this trust and the other three trusts to the nieces. The record shows that except for the apartment building and the Wanner foundry bonds,

which were part of his mother's estate, the property which he conveyed to the temporary trustees proved to be practically worthless. Any claim by him to any of these assets is not only unconscionable but absurd.

We are unable to see wherein he was wronged by the decree directing the transfer of the apartment building to the successor trustee. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*