**Estate of Joseph E. Sacks, Deceased.**
**Jo Ann Whitlock, et al., Petitioners-Appellants, v. Ethel Sacks, as Administrator of the Estate of Joseph E. Sacks, Deceased, and Ruth Fischer and Mildred Sorosky, Respondents-Appellees.**

Gen. No. 50,861.

First District.
November 8, 1967.

Joseph B. Gilbert, and Morris Gordon Meyers, of Chicago, for appellants.

Jack Edward Dwork, and Harry G. Fins, of Chicago, for appellees.

MORAN, P. J.

Jo Ann Whitlock, Judith Nay, Joseph Sacks and John Sacks, the children of Joseph E. Sacks by a prior marriage, appeal from the denial of their petition filed in the Probate Division of the Circuit Court of Cook County against his widow, Ethel Sacks, as the administratrix of the estate of Joseph Sacks, seeking an order that she be compelled to list in the inventory of his estate some 19,000 shares of stock which she had claimed as the survivor of an alleged joint tenancy with said Joseph E. Sacks, and from the denial of their petition against Ruth Fischer and Mildred Sorosky, sisters of the decedent seeking an order to compel them to surrender to the administratrix, as an asset of the estate, the payments due on the sale of an apartment house through a Bond for Deed. This property had been the subject matter of a land trust and appellants contend that the sale terminated the trust and thereby destroyed the sisters' beneficial interest.

We first discuss the issues concerning the shares of stock. In April, 1957, Joseph E. Sacks and Ethel Griffin (now Ethel Sacks) signed an agreement with the brokerage firm of Bear, Stearns & Co., entitled "Joint Account with Right of Survivorship" which gave each of them the power to buy and sell securities on margin or otherwise, and which also provided that:

> In the event of the death of either or any of the undersigned, the entire interest of the joint account shall be vested in the survivor or survivors on the same terms and conditions heretofore held . . . . The undersigned request that the said Joint Account be carried under the following designation: Joe E. Sacks and Mrs. Ethel Griffin as Joint Tenants with the Right of Survivorship and not as Tenants in Common.

In June, 1960, the same parties entered into a similar agreement with the brokerage firm of H. Hentz & Company. Paragraph 2 of this agreement reads:

> We hereby state that we are: (a) *joint tenants with right of survivorship and not tenants in common.* In the event of the death of either or any of us, the entire interest in the account shall be vested in the survivor, or survivors . . . and the estate of the decedent shall have no interest in the assets at the date of death or its operation thereafter.

At the time of the death of Joseph E. Sacks, the shares of stock in the accounts with the two brokerage firms exceeded 20,000 in number, with a net value in excess of $115,000. Except for 1537 shares issued directly by certain corporations in the names of Joseph E. Sacks and Ethel Sacks as joint tenants, the remainder of the shares were carried in the name of the brokerage firm. Such stock is referred to as being in the street name; a common practice when the parties are buying on margin, as the Sackses were.

The petitioners concede that the 1537 shares issued in the names of Joseph E. Sacks and Ethel Sacks as joint tenants belong to Ethel Sacks and are not part of the estate. They contend, however, that the remainder of the shares, issued in the two brokerage firms' names, belong to the estate of Joseph E. Sacks on the ground that the parties did not create a valid joint tenancy under the general provisions of the statute governing joint tenancy (c 76, § 2, Ill Rev Stats 1965) or subsection (b) of section 2 of said statute which concerns stock issued by corporations or other entities.

The general provisions of section 2 of the aforementioned statute state that joint tenancy with right of survivorship is abolished except as to executors, trustees, or where by will or by other instrument in writing there is expressed an intention to create a right of survivorship in

4

personal property. The appellants contend that the signed agreements do not come within the exceptions and rely primarily on In re Estate of Wilson, 404 Ill 207, 88 NE2d 662 (1949), and Illinois Public Aid Commission v. Stille, 14 Ill2d 344, 153 NE2d 59, arguing that under the authority of these cases, in order to create a right of survivorship within the exceptions of the general provisions of the statute, there must be an actual transfer of personal property to the joint tenants by a written agreement; that the parties failed to effectuate such transfer and therefore Ethel Sacks did not meet the burden of establishing the existence of a joint tenancy in personal property with the right of survivorship.

 The general rule is that title to stock passes directly to the customer on a purchase by his broker for the customer's account, and this is true even though the broker retains possession of the stock. Murphy v. Sincere, 299 Ill App 580, 582, 20 NE2d 610 (1939).

> According to most of the cases, the title to securities purchased by a stockbroker vests immediately in the customer whether the purchase is on margin or otherwise, and even though the broker retains possession of the stock certificate or the customer has paid nothing on the purchase price. Under this rule, the customer for whom a broker purchases stock is the owner thereof from the time of purchase, whether purchased in his name or not. There is some authority, however, that upon receiving the stock, title is in the broker with beneficial ownership in the customer. 12 Am Jur2d, § 131.

In either event there is a transfer which vests at least an equitable title in the customer. There is a transfer from the last owner to the customer with the title vesting in the broker in his fiduciary relationship. The transfer in the present case is recorded on the brokerage firms' ac-

5

counts for the Sackses and these accounts are listed as accounts with right of survivorship.

The appellants' comparison of the agreement in this case with the application for a safety deposit box in In re Estate of Wilson, supra, and Illinois Public Aid Commission v. Stille, supra, is not valid. In those cases the parties signed a card which was stamped with the words "Joint Tenancy with Right of Survivorship." Such joint tenancy was held to be a mere joint tenacy for access to the box. There was not sufficient evidence to show that there had been a delivery of the contents into joint possession. In the present case each time a purchase was made the brokerage firm made an entry crediting the Sackses' account with the number of shares purchased. The agreements signed by the Sackses could be considered as an agreement between them on the one side and the brokerage firm on the other. However, they may also be considered as an agreement between them—an agreement spelling out that they desire that a joint tenancy with right of survivorship be established. The agreements state that upon the death of one, the entire interest shall vest in the survivor and, in addition, the agreement with H. Hentz & Co., further specifies that the decedent's estate shall have no interest in the assets of the account.

The transfer of the stock from the seller to the broker and the subsequent credit entry in the account of the Sackses together with the signed agreements, clearly expressing the parties' intentions, is ample evidence of a written instrument to comply with the general provisions of the aforesaid statute.

Was there also statutory authority for the creating of a joint tenancy under section (b) of the aforesaid statute? Section (b) provides as follows:

> When shares of stock, bonds or other evidence of indebtedness or of interest are or have been issued or registered by any corporation, association or other entity in the names of two or more persons as joint

6

tenants with the right of survivorship, such corporation, association or other entity and their respective transfer agents may, upon the death of any one of such registered owners, transfer said shares of stock, bonds, or other evidences of indebtedness or of interest to or upon the order of the survivor . . . without inquiring into the existence, validity or effect of any such will or other instrument in writing or the right of such survivor . . . to receive the property, and without liability to any other person whomsoever might claim an interest in or a right to receive . . . the property so transferred.

Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850, declared that registration of stock in the joint names on the books of a corporation is sufficient to vest title in the survivor whether an agreement has been signed by the parties or not; that the provisions of section (b) were broad enough to uphold a right of survivorship in a savings and loan account since the act extended to evidence "of interest" issued by an association; that "promissory notes when drawn in appropriate language, are instruments in writing within the meaning of Section 2, (Ill Rev Stats 1961, c 76, par 2,) and constitute exceptions to the provision, abolishing joint tenancy in personal property"; and that where a statutory right of survivorship exists it is unnecessary to follow the common law principles of joint tenancy.

Appellants contend that since the shares were registered in the names of the brokerage firms and not the Sackses, section 2(b) of the statute does not apply. To our knowledge this question has never been considered by this or any other jurisdiction. However, we believe that a reasonable interpretation of section (b) must impel us to conclude that the credit accounts of the brokerage firms were "other evidences . . . of interest" issued by an "entity" in the names of two or more persons. To hold that every share of stock must be registered in the in-

dividual tenant's name would lead to harsh and undesirable results.

■ ■ Shares of stock are purchased through a broker, in the "street name" for two reasons—for the convenience of the parties, and out of necessity and convenience in the case of a margin account. In a recent New Jersey case the court held that the owners of stock registered in a "street name" could object to a proposed plan of reorganization and seek appraisal of the stock. Bohrer v. United States Lines Co., 92 NJ Super 592, 224 A2d 348 (1966).

> The presently prevailing philosophy demands a recognition of the realities of modern stock practices and the necessity to afford such protection to stock beneficially owned as is not inconsistent with protection of the corporation rights. Id. at 351.

There are undoubtedly many people who have entered agreements similar to the ones in the instant case, fully expecting that upon the death of one of them the shares will pass immediately to the survivor. Brokerage firms have the same expectations and, as in the present case, at the time of death transferred the shares to the survivor in compliance with their expressed wishes. The appellants wish to change this practice because the legislature did not specifically mention this manner of owning stock. Without straining the ordinary meaning of the words of the statute a joint tenancy with right of survivorship may be created in shares of stock issued in the "street name."

We next discuss the question concerning the proceeds of the "land trust." In 1958 Joseph E. Sacks entered a trust agreement with the Cosmopolitan National Bank of Chicago, appointing the bank as Trustee of a twelve-unit apartment building. The trust agreement provided:

> The following named persons shall be entitled to the earnings, avails and proceeds of said real estate ac-

8

cording to the respective interests herein set forth, to wit:

> The entire interest in JOSEPH E. SACKS. Upon the death of the said JOSEPH E. SACKS, then to MILDRED SOROSKY and RUTH FISCHER, in equal shares.

It is UNDERSTOOD AND AGREED . . . that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title . . . and to manage and control said real estate . . . , and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate and that such rights in the avails of said real estate shall be deemed to be personal property, . . . and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid.

The agreement also provided:

While The Cosmopolitan National Bank of Chicago is the sole owner of record of the real estate referred to herein, and so far as the public is concerned, has full power to deal therewith, it is understood and agreed by the parties hereto . . . that said The Cosmopolitan National Bank of Chicago will . . . convey title to said real estate, execute and deliver deeds for or otherwise deal with the title to said real estate only when authorized to do so in writing and that it will . . . on the written direction of JOSEPH E. SACKS or on the written direction of such person as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with the title to said real estate. . . . If any property remains in this trust twenty years from this date it shall be

9

sold at public sale by the Trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto.

At the direction of Joseph E. Sacks the Bank entered into Articles of Agreement for Trustee's Deed with a third party. This agreement was for the sale of the subject property for the sum of $80,000; $15,000 down and $548.52 per month, until the balance, including interest, was paid. In accordance with the agreements, these sums were paid to the Lake Shore National Bank for credit to the checking account of Joseph E. Sacks. At the death of Joseph E. Sacks the unpaid balance was approximately $61,000. Since his death, the payments have been made to his sisters, Ruth Fischer and Mildred Sorosky.

Appellants contend that the Articles of Agreement for Trustee's Deed were improperly turned over to Ruth Fischer and Mildred Sorosky and seek to compel them to turn over the agreement to Ethel Sacks, administratrix, so that it may be inventoried in the decedent's estate. They argue that the sale of the property was the sale of the trust res which would terminate the trust and divest the appellees of their remainder; that since the original conveyance to the trustee included both the legal and equitable title to the property, the equitable title passed to the vendees at the time of the contract for sale of the property; that therefore there is nothing in the trustee but the naked legal title, which is held for the benefit of the vendees and nothing remaining in the trust which could attach to the appellees' interest.

The sole question for consideration is whether the articles of agreement for Trustee's Deed terminated the trust and thereby destroyed the appellees' interests. In the case of Schumann-Heink v. Folsom, 328 Ill 321, 159 NE 250 (1927), involving a business trust, the court stated:

10

> If the declaration of trust . . . creates a trust and there is nothing in it which is against the public policy of this state, then the decision . . . depends upon the application of well established principles of the law of contracts and trusts. Id. at 326–327.

██ General rules of construction of written instruments apply to the construction of trusts. The purpose in construing a trust is to determine the intent of the settlor.

> In the case of a trust based on a written instrument, the intention of the trustor is to be ascertained from the language thereof, and the court may not go outside the language in an effort to give effect to what it conceives to have been the actual intent or motive of the trustor. If the language is unambiguous and perfectly clear, there is no field for the play of construction; if the trustor has clearly expressed an intention, the court cannot impute to him another . . . . 54 Am Jur 35.

The trust agreement clearly states that the beneficiaries have "the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate. . . ." Thus, by the agreement itself, proceeds from the sale or other disposition of the property were to be paid to the deceased during his lifetime and thereafter to the appellees.

██ The appellants' argument that the sale of the property was the sale of the trust res is in conflict with the expressed intention of the settlor. "In general, any right, interest or thing which may be the subject of property may be granted in trust." Burke v. Burke, 259 Ill 262 at 268, 102 NE 293. The trust res was the apartment building and upon its disposition, the proceeds of this disposition becomes the subject matter of the trust. This was the expressed intention of the grantor.

11

■ The only evidence showing his intention is the trust agreement itself, and the intention there stated is that upon his death proceeds from the sale or other disposition of the property is to vest in the appellees. Where the words used in a trust agreement are plain and their meaning clear, the plain intention will prevail over the presumed intention. Storkan v. Ziska, 406 Ill 259, 94 NE2d 185 (1950).

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.