JAMES VOURNAZOS *et al.*, Plaintiffs-Appellants, *v.* CHARLES VOURNAZOS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-73

Opinion filed April 12, 1979.

Joseph J. Kozlowski and John A. Smith, both of Chicago, (Kozlowski & Smith, of counsel), for appellants.

Carl L. Klein, of Oak Lawn, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order dismissing their complaint and declaring respective rights of the parties under a trust agreement. On appeal they contend that the trial court erred in (1) determining the respective rights of the parties under a trust agreement, (2) refusing to impose a constructive trust upon a grantee taking conveyance from a trustee and (3) allowing defendants to file a section 41 petition (Ill. Rev. Stat. 1977, ch. 110, par. 41) after plaintiffs had filed a notice of appeal.

The following facts are pertinent to a disposition of this appeal.

On July 18, 1956, the four Vournazos brothers, James, George, Harry and Charles, entered into a land trust agreement with Drovers Trust and Savings Bank (the bank). The trust agreement provided that the bank would take title to five lots located in Chicago as trustee for the benefit of the four Vournazos brothers. Each of the four brothers received a 25 percent beneficial interest in the trust. The bank retained the right under the trust agreement to resign as trustee at any time. In the event of such a resignation, the trust agreement provided that a successor trustee "may be appointed by the person or persons then entitled to direct the Trustee in the disposition of the trust property." The trust agreement further provided in pertinent part that:

"It is understood and agreed by the parties hereto and by any

person who may hereafter become a party hereto, that said Drovers Trust and Savings Bank will deal with said real estate only when authorized to do so in writing and that it will (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by the beneficiaries) *on the written direction of Majority of person or persons holding any beneficial interest hereunder* or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with the title to said real estate." (Emphasis added.)

The beneficiaries specifically retained the right to manage and control the trust property. The agreement also provided that the bank would not be called upon to do anything in the management or control of the property "except on the written instructions as hereinabove provided." Property remaining in the trust 20 years from the date of the agreement was to be sold at public sale by the trustee with the proceeds to be divided among the beneficiaries. The trust agreement was signed by a vice-president of the bank and by each of the four Vournazos brothers.

The trust agreement was amended on April 3, 1957, to provide that in the event of the death of any Vournazos brother, the remaining three brothers would take the decedent's interest in the trust as joint tenants.

On March 9, 1970, James Vournazos assigned his 25 percent interest in the trust to himself and Helen J. Vournazos, his wife, as joint tenants. The assignment provided that the power of direction under the trust would be exercised by James and Helen Vournazos. The bank acknowledged receipt of this assignment on March 10, 1970.

Harry Vournazos died on June 1, 1973, survived by his brothers, James, Charles and George, who then received his 25 percent interest in the trust as joint tenants. On February 2, 1976, James Vournazos executed a document purportedly transferring to Helen Vournazos, his wife, all his rights and beneficial interest in "an undivided one-third (1/3) interest in the undivided twenty-five per cent (25%) interest formerly held by Harry Vournazos, Deceased." Helen Vournazos accepted the assignment, but the bank apparently refused to acknowledge receipt thereof.

On February 4, 1976, James and Helen Vournazos filed a complaint against the bank and Charles and George Vournazos in which they sought, in addition to other relief, an order cancelling the trust agreement and a declaratory judgment as to the respective rights of the parties in the said trust agreement. Subsequently, on April 27, 1976, George and Charles Vournazos executed a document accepting the bank's resignation as trustee and authorizing and directing the bank to deliver its trustee's deed for all property in the trust to Charles Vournazos as grantee. The bank

complied with the instructions and delivered its trustee's deed to Charles Vournazos on April 28, 1976. On the same day Charles and George Vournazos executed a document appointing George Vournazos as successor trustee under the trust agreement. Charles Vournazos, also on April 28, 1976, then executed and delivered a deed in trust for all the property in the trust to George Vournazos as successor trustee. On the same day George Vournazos, as successor trustee, conveyed all of the property held in the trust to Bananas Steak House, Inc., an Illinois corporation owned and operated by the three Vournazos brothers. James Vournazos owned one-third of the outstanding stock in the Bananas Steak House while Charles and George Vournazos owned the remaining two-thirds. The matter subsequently proceeded to trial on August 31, 1977. The evidence adduced at trial is not relevant to the issues on appeal. Following the conclusion of plaintiffs' case the trial court on November 8, 1977, granted the motion of defendants to dismiss the complaint. The trial court also found "that the intention of the settlor and the original parties was that of equality of ownership of beneficial interest with the power of direction" and that the power of direction properly "lies with and in direct proportion to the ownership of beneficial interest" in the trust. The trial court held, therefore, that the issuance of the trustee's deed by the bank to Charles Vournazos was proper.

Plaintiffs filed their notice of appeal on November 8, 1977. On December 5, 1977, defendants filed a petition with the clerk of the circuit court under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41), seeking costs and fees for their defense of the suit. The trial court granted defendants leave to file the petition on December 8, 1977.

OPINION

Plaintiffs first contend that the trial court erroneously held that the power of direction under the trust agreement rested with the holders of the majority share of the beneficial interest rather than with a majority of persons holding any beneficial interest under the trust. They argue that the power of direction was improperly exercised by Charles and George Vournazos, holders of two-thirds of the beneficial interest after Harry Vournazos' death, because at the time of that exercise there were four persons having any beneficial interest in the trust, namely; James Vournazos and Helen Vournazos, who together held one-third of the beneficial interest, George Vournazos and Charles Vournazos. Under plaintiffs' theory, the power of direction would have to be executed by at least three of the four above beneficiaries, regardless of the size of their respective beneficial interests.

■■ ■ The purpose of interpreting any trust agreement is to determine the

true intent of the settlor (*Storkan v. Ziska* (1950), 406 Ill. 259, 94 N.E.2d 185; *Estate of Sacks* (1967), 89 Ill. App. 2d 1, 231 N.E.2d 688) and to give effect to that intention if not against the law, good morals or public policy. (*Lambos v. Lambos* (1973), 9 Ill. App. 3d 530, 292 N.E.2d 587.) In construing the language of a trust agreement we must "consider the facts and circumstances which gave rise to its execution, together with the provisions of the instrument." (*Harris Trust & Savings Bank v. Wanner* (1946), 393 Ill. 598, 606, 66 N.E.2d 867, 871.) We must consider the entire trust agreement rather than any isolated provision. (*United States Trust Co. of New York v. Jones* (1953), 414 Ill. 265, 111 N.E.2d 144.) Moreover, as our supreme court stated in *United States Trust Co.*:

> "In construing a written instrument, its letter should be controlled by its spirit and purpose, bearing in mind that the terms employed are servants and not masters of an intent, and are to be interpreted so as to subserve, and not to subvert, such intent. * * * * '* * * '* * * more regard is due to the real intention of the parties than to some particular word that may have been used in the expression of that intention." (*Chicago, Madison and Northern Railroad Co. v. National Elevator Co.* 153 Ill. 70.) "The experience of human affairs teaches courts that this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the objects they evidently had in view." (*Robinson v. Stow,* 39 Ill. 568.) The same principle is announced in *Street v. Chicago Wharfing Co.* 157 Ill. 605. "Particular expressions will not control where the whole tenor or purpose of the instrument forbids a literal interpretation of the specific words." ' " 414 Ill. 265, 271-72, 111 N.E.2d 144, 147-48.

The trust agreement in the instant case vested the power of direction with a "majority of persons holding any beneficial interest hereunder." The beneficial interest under the trust was originally divided equally among the four then living Vournazos brothers. The obvious purpose of the trust was to benefit the Vournazos brothers. We believe that the normal and probable purpose of the language used in defining the power of direction was to insure that the power would rest with a majority of the Vournazos brothers living at any given time.

The construction which plaintiffs ask this court to adopt could, as they readily admitted at oral argument, produce a "ludicrous" result, a result which we believe would violate the spirit and purpose of the trust agreement. Under plaintiffs' theory, one brother could merely divide his 25 percent interest among himself and three other persons, thereby gaining total control of the trust for that 25 percent interest. The original beneficiaries could engage in endless warfare by dividing their respective interests into ever more minute fractional interests in order to seize

control of the power of direction. We will not construe the trust agreement so as to produce so unreasonable and impractical a result and so as to frustrate the evident purpose of the trust agreement.

The circumstances surrounding the creation of the trust support the construction adopted by the trial court. When the trust was created the majority of persons holding any beneficial interest and the holders of the majority of the beneficial interest were identical. The trial court found that other members of the Vournazos family, including two sisters and the mother, were excluded from the trust, indicating that control of the trust property should remain with the brothers.

■ We do not believe *Continental Illinois National Bank & Trust Co. v. Eliel* (1959), 17 Ill. 2d 332, 161 N.E.2d 107, upon which plaintiffs rely, requires a different result. In that case the court found no indication that testatrix had intended "heirs" to be used in other than its technical meaning. The court also held that such a technical use would result in a reasonable interpretation of the will. Here, it is clear that plaintiffs' construction would result in an unreasonable, if not absurd, result. We, therefore, find that the trial court correctly determined the rights of the parties under the trust agreement.

■ Defendants next contend that the trial court erred in failing to impose a constructive trust upon Charles Vournazos when he took a trustee's deed to the trust property from the bank on April 28, 1976. However, the law is clear that "the theory upon which a case is tried in the lower court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review." (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) To permit a change of theory on review would do injustice to the opposing party and weaken our system of appellate jurisdiction. (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 131 N.E.2d 487.) Plaintiffs here concede that they did not explicitly raise the issue of a constructive trust in the trial court. They argue, however, that the facts which they presented raised the issue by "implication." We disagree. We have carefully reviewed the record before us and find no reference to a constructive trust. The defendants were not asked to defend against such a theory, nor was the trial court asked to rule on it. Plaintiffs cannot raise the issue of a constructive trust for the first time in this court. See *In re Estate of Kime* (1976), 42 Ill. App. 3d 505, 356 N.E.2d 350.

■ Plaintiffs finally contend that the trial court erred in granting defendants leave to file a petition for costs and fees pursuant to section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 41.) However, this issue is not properly before this court on appeal. Although the parties here have not raised the question of appealability, jurisdiction cannot be conferred upon this court where the order appealed from was not one

from which an appeal would lie. (*Brauer Machine & Supply Co. v. Parkhill Truck Co.* (1943), 383 Ill. 569, 50 N.E.2d 836.) An appeal to this court may be taken only from a final order, judgment or decree, unless otherwise authorized by a Supreme Court Rule. (*Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 147 N.E.2d 371.) The order allowing defendants to file their section 41 petition is clearly not a final order since it does not dispose of the rights of the parties, either upon the entire controversy or some definite and separate part of it. (See *South Chicago Community Hospital v. Industrial Com.* (1969), 44 Ill. 2d 119, 254 N.E.2d 448.) Moreover, an appeal from this order is not authorized as an interlocutory appeal under either Supreme Court Rules 307 or 308. (Ill. Rev. Stat. 1977, ch. 110A, pars. 307, 308.) Consequently, the order complained of is not appealable and we do not reach the assignment of error urged by plaintiffs.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.