(No. 35172.—

Continental Illinois National Bank and Trust Company of Chicago, Trustee, *et al.,* Appellees, *vs.* Theresa Eliel, *et al.*—(Hortense Yondorf, Appellant.)

*Opinion filed September 24, 1959.*

HERTZ, COOK & FLYNN, of Chicago, (MILTON S. YON-DORF, JR., of counsel,) for appellant.

PAUL H. LEFFMANN, of Chicago, (LEONARD ROSE, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This suit was filed in the superior court of Cook County by the successor trustee of a testamentary trust established by the provisions of the will of Rosa G. Newman, deceased, to construe the terms of that will. A decree was entered in the trial court upon a finding of facts by the court from the allegations of the complaint which were admitted by all the parties and the uncontested statement of facts made by counsel at the hearing. The findings are that Rosa G. Newman died February 21, 1923, and her last will and testament was executed February 4, 1922. By the terms of her will, after making certain specific legacies, she left the remainder of her estate in trust, and the trustee was directed to pay to her nephew, Joseph A. Kulscar (also known as Joseph A. Newman) the sum of $234 per month for his lifetime. She provided that upon his death, if he married and left issue, her "interest in the B. Grossman Estate" should be paid to the surviving legal issue of Joseph A. Kulscar. Joseph A. Kulscar did not marry and he died February 13, 1957. In such event, the will provided that upon his death the testatrix's "interest in the B. Grossman Estate should revert back to the heirs of the B. Grossman Estate."

Rosa G. Newman was one of the nine children and heirs-at-law of B. Grossman, who died in 1890, leaving certain real estate at 114 South State Street in Chicago. He devised this real estate equally to his nine children who were his heirs-at-law. The devise was outright to eight of his children, but the interest of his daughter, Hannah Kulscar, was placed in trust for her benefit, to pass on her death equally to her brothers and sisters. Hannah Kulscar died in 1891, and her interest therein passed to her eight brothers and sisters. Thus at the time of her death, Rosa G. Newman was the owner of an undivided one-eighth interest in said property.

At the death of Rosa G. Newman, six children of B. Grossman survived, namely, Edward Grossman, Herman Grossman, Theresa Eliel, Fannie Byfield, Antonia Maas, and Lena Fernbach. At Joseph A. Kulscar's death, only Theresa Eliel survived of all the children of B. Grossman.

All of the defendants in this cause, being all of the persons who could or might claim an interest in the trust estate by descent, purchase, or assignment, defaulted except Theresa Eliel and Hortense Yondorf. Hortense Yondorf is the only heir-at-law of Herman Grossman, a brother of Rosa G. Newman and a son of B. Grossman. These two defendants are in dispute as to the meaning and legal effect of the term "heirs of the B. Grossman Estate" as used in the will of Rosa G. Newman.

Theresa Eliel contends that the word "heirs" was used in its ordinary legal sense to designate those persons who were the heirs of B. Grossman at the time of his death—his nine then living children. However, at the death of Rosa G. Newman only six of the children who were members of the class designated as the "heirs of the B. Grossman Estate" were alive. She insists that only such heirs were meant to be contingent beneficiaries under said will; and at the time of the death of Joseph Kulscar she, Theresa Eliel, was the only one of such contingent beneficiaries alive.

Defendant Hortense Yondorf advances several different theories to support her claim to a part of the estate of Rosa G. Newman. The first was that Rosa G. Newman, by her will, made a gift of a contingent remainder to a class of persons to be ascertained as if the ancestor, Benjamin Grossman, had died at the same time as Joseph Kulscar, and that all persons who would have been the heirs of Benjamin Grossman if he had died at such time should share in the remainder interest in the trust on that basis.

The second alternative theory of Hortense Yondorf is that if the "heirs of the B. Grossman Estate" are to be

ascertained in a technical sense, then the gift is not one to a class but to specific identified individuals—the nine heirs of Benjamin Grossman—to vest upon the death of Joseph Kulscar. She claimed then that the gift to Theresa Eliel was only a one-eighth interest in her estate, and the remaining seven-eighths would lapse due to the death of the devisees, and would descend to the legal heirs-at-law of Rosa G. Newman as intestate property.

She finally contends that the gift was to a class composed of the heirs of B. Grossman, meaning those who would have been his heirs at the death of Joseph Kulscar, vesting according to representation, *per stirpes,* of the individual members of the original heirs of B. Grossman. Thus she contends that both she and Theresa Eliel would be entitled to a one-seventh interest.

The trial court decreed that the gift was a gift to a class determined as of the date of the death of B. Grossman, that the surviving members of the class receive the shares of any deceased members at the time of distribution, and Theresa Eliel being the only surviving member is entitled to the entire gift. The corpus of the trust including an interest in real estate, a freehold is involved, and appeal is brought directly to this court.

The paramount rule of testamentary construction of a will is to ascertain the intention of the testator as expressed in his will, and to give effect to such intention in the distribution of his estate, unless to do so would violate some settled rule of law or be contrary to public policy. *Stites* v. *Gray,* 4 Ill.2d 510; *Golstein* v. *Handley,* 390 Ill. 118; *Peck* v. *Drennan,* 411 Ill. 31.

Hortense Yondorf agrees that this is a correct statement of the law. In accordance with this principle she insists that the expression "the heirs of the B. Grossman Estate" as used in this will was not used in its technical sense as meaning those who were the heirs of Benjamin Grossman at the time of his death, but those who would

have been his heirs had he died at the date of the death of Joseph Kulscar, the life annuitant. She contends that this is a more reasonable interpretation of the testatrix's intention, gathered from the words used in light of the language of the will, the nature of the will, and the circumstances of her family. She argues that the testatrix could not reasonably have expected any of her brothers and sisters to survive her nephew, Joseph Kulscar, and it is unreasonable that she intended her estate to go to persons whom she would expect to be dead by the date of distribution.

Theresa Eliel contends, however, that since the testatrix used the words "heirs of the B. Grossman Estate" in describing the contingent remaindermen, without the use of any language inconsistent with the technical meaning of the word "heirs," it is presumed that she used it in its technical sense, and that it thus refers to those persons appointed by law to inherit the estate of Benjamin Grossman at his death—his nine children. *Hull* v. *Adams,* 399 Ill. 347, 351; *Gridley* v. *Gridley,* 399 Ill. 215; *Stites* v. *Gray,* 4 Ill.2d 510.

We have carefully examined the many and various cases cited to this court by Hortense Yondorf in support of her assertion that the technical and commonly accepted and generally understood legal meaning of the word "heirs" should and must give way to a "more reasonable" meaning upon which she relies. In support of her assertion that the words in a will should be given the most reasonable meaning in view of the facts of the particular case, she cites the cases of *Auger* v. *Tatham,* 191 Ill. 296; *Abrahams* v. *Sanders,* 274 Ill. 452; *Ward* v. *Caverly,* 276 Ill. 416; *Levings* v. *Wood,* 339 Ill. 11; and *Stagg* v. *Phenix,* 401 Ill. 134. We do not disagree with the statements contained therein that the reasonable interpretation of the testator's intent is to govern, but in all of those cases the construction found to be reasonable is that determination of intention expressed by the plain language of the will, given its

ordinary and commonly accepted meaning. In none of those cases is the reasonable construction opposed to the technical construction.

Hortense Yondorf does cite four cases in which a construction differing from the technical meaning is applied to the term "heirs." (*Barnhart* v. *Barnhart,* 415 Ill. 303; *Black* v. *Jones,* 264 Ill. 548; *Boldenweck* v. *City National Bank and Trust Company of Chicago,* 343 Ill. App. 569, and *Johnson* v. *Askey,* 190 Ill. 58.) In each of those cases the technical meaning of the word "heirs" as it would apply in each situation was avoided and a different meaning accepted, for the reason that the express language of the will as a whole indicated a differing meaning. That meaning, (differing from the technical or ordinary and common meaning,) was not adopted for the sole and only reason that it was more reasonable, but because it was the obviously expressed intent of the testator. It was not based upon conjecture and surmise.

There is no language in this will that impels us to a construction differing from the ordinary and commonly accepted meaning of the expression "heirs of the B. Grossman Estate." There being no manifest intention of the testatrix expressed in her will that the word "heirs" should refer to those determined at some time other than the date of the death of Benjamin Grossman, the general rule of testamentary construction will apply, and the term will refer to those who were the heirs of Benjamin Grossman at his death. (*Hull* v. *Adams,* 399 Ill. 347.) That is the commonly understood meaning of the term, and is likewise a reasonable interpretation of the express language of the will.

Hortense Yondorf then urges that the legal and technical heirs of Benjamin Grossman were determined at the time of his death and were known to the testatrix to be her brothers and sisters, hence she intended to make a gift to those known individuals and not to a class. Hence it

is Hortense Yondorf's position that the heirs of those known and identified brothers and sisters would take their ancestors' shares.

A general, often-quoted definition of a class gift is "a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." (*Volunteers of America* v. *Peirce*, 267 Ill. 406; *Levings* v. *Wood*, 339 Ill. 11.) The case of *Volunteers of America* v. *Peirce* also held that if it appears from the language of the will that the number of persons who are to take and the amounts of their shares are uncertain until the devise or bequest takes effect, the beneficiaries will generally be held to be a class.

Many other factors are to be considered to determine if a class is indicated by the will: the fact that there is a natural class among the beneficiaries; the relation of the testator to the objects of his bounty; the subject matter of the gift; the skill of the draftsman of the will; the circumstance that a construction of a gift as one to individuals will produce a partial intestacy; and the circumstance that the testator, although knowing of the death of a beneficiary, failed to make any change in the will with respect to the gift as one to individuals, resulting in favoring strangers to the testator's blood. (*Krog* v. *Hafka*, 413 Ill. 290.) Considering all of these definitions and factors, we are drawn to the conclusion that the gift in question is one to a class and not to individuals. The contingent remainder was not given to the testatrix's brothers and sisters, identified as such, nor to them by name, but to those who were the heirs of B. Grossman. Those heirs being those who were the heirs of B. Grossman at his death. It happens that those heirs were the nine children of B. Grossman, determined as of the date of his death, and were the

brothers and sisters of the testatrix. She, however, identified them as a class or group, and they comprised a "natural" class, having a common relationship to the testatrix. They were, as Hortense Yondorf insists, a group determined and incapable of increase. Nevertheless, just as Hortense Yondorf insists, those who would take and the amounts each would share were undetermined until the date of the death of Joseph Kulscar, and so the class who would take remained uncertain until that date.

The gift was the interest which Rosa G. Newman inherited as an heir of the B. Grossman estate, and by her will she evidenced a desire that it be, in effect, returned to the line of that estate, and be shared by the heirs of that estate. If this devise is considered as one to individuals, partial intestacy of some portions thereof would result, and a gift to individuals would result in favoring some strangers to testatrix's blood. The gift is one to the class identified as the "heirs of the B. Grossman Estate," of whom Theresa Eliel was the only survivor at the death of Joseph Kulscar.

Hortense Yondorf additionally contends that the gift to the "heirs of the B. Grossman Estate" either has lapsed as to some heirs and passes as intestate property, or that the gift vested *per stirpes* in the class known as the heirs of B. Grossman, and the deceased brothers and sisters are thus represented by their heirs in sharing the estate. However, neither of such assertions can be supported.

We have determined that the devise was one to a class, being those persons who were the heirs of the B. Grossman estate. The devise was contingent upon Joseph Kulscar's leaving issue surviving. The devise would not vest until Joseph Kulscar's death. No provision is made respecting the disposition of the contingent share of any member of the class, should he or she die prior to the vesting of the devise. The class was only ascertained with certainty upon the death of the beneficiary for life. No other provision being made, the gift to the class does not lapse as

to any member who predeceased the vesting of the remainder, but the entire remainder estate vests in those who comprise the class on that date, where the deceased member of the class is not a descendant of the testator. The class, in fact, is not actually ascertained until the happening of the contingency, hence there is no lapse, and there can be none, for nothing is vested in nor devised to any particular member of the class until the contingency occurs. There could be no lapse. *Drury* v. *Drury*, 271 Ill. 336; *Martin* v. *Casner*, 383 Ill. 260; *Geiger* v. *Geer*, 395 Ill. 367.

Having determined that the contingent remainder was to a class; that the class was those persons who were heirs of Benjamin Grossman at his death; that the remainder interest did not vest until the death of Joseph Kulscar and those who comprised the class in whom the remainder vested were only then determined, there can be no question of representation *per stirpes* of deceased children of B. Grossman. The only person in whom the estate could vest is alive. That person is Theresa Eliel. None of her brothers and sisters are alive, and none of them survived the date of vesting of the estate, hence not having acquired or been vested with an interest there is no interest in which their heirs may claim a share.

We, therefore, conclude that Theresa Eliel is the only member of the class who survived the contingency, and she thereby became vested with the entire trust estate. Theresa Eliel is thus ascertained to be the only person who may share as a member of the class fixed by the will of Rosa G. Newman. Consequently we affirm the decree of the superior court of Cook County.

*Decree affirmed.*