(No. 36462.—

TOM O'CONNELL, EXR., *et al.,* Appellants. *vs.* JAMES GAFFNEY *et al.,* Appellees.

*Opinion filed January 23, 1962.*

FLYNN AND FLYNN, of Jacksonville, for appellants.

BELLATTI, FAY & BELLATTI, of Jacksonville, for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Plaintiffs appeal directly to this court from a decree of the circuit court of Morgan County entered in a will construction suit wherein a freehold is involved.

These are the material facts in the case which were stipulated by counsel:

The will of Owen Kiernan, which was duly probated, was executed in 1921, in the second clause of which he devised 80 acres of land as follows:

"* * * to my nephew Owen Gaffney for use during his natural life, and after his decease I give, devise and bequeath the said land to the wife and children of my said Nephew, Owen Gaffney, should any survive him, share and share alike, and in the event no wife or children survive him, I give devise and bequeath the said land *to my next eldest nephew surviving* for his sole use and benefit forever." (Emphasis supplied.)

At that time and at the time of Kiernan's death on December 10, 1923, he had numerous nephews living, including two nephews younger and eleven older than Owen Gaffney, who died testate on June 12, 1958, leaving no wife, children or descendants him surviving. At the time of Owen Gaffney's death, only two nephews of Owen Kiernan were still

living, James Gaffney and Eugene Kiernan, both of whom were older than Owen Gaffney, and none of Owen Kiernan's nephews who were younger than Owen Gaffney survived Owen Gaffney.

It was also stipulated that the residuary clause of Owen Gaffney's will reads as follows:

"All the rest, residue and remainder of my estate of every kind and nature whatever, real or personal, I direct my said executors to convert into cash and divide the same in two equal parts. I direct that one part be paid in equal shares, to my two brothers, James Gaffney and Edward Gaffney of Ireland. I direct that the other part be divided equally between Our Saviour's Hospital of Jacksonville, Illinois, and Our Saviour's Church, Jacksonville, Illinois."

It was further stipulated that both of Owen Gaffney's brothers were living at the time of execution of the will but only James Gaffney survived, Edward having predeceased Owen.

The executor of Owen Gaffney's will and others, as plaintiffs, contend as to Owen Kiernan's will that the term "next eldest nephew" could mean only one younger than Owen Gaffney and that, since there were none living at Owen Gaffney's death answering this description, the devise of the remainder after the life estate lapsed and went to the persons described in the residuary clause of the will, who were all the heirs-at-law of Kiernan, including the Owen Gaffney estate and the defendant James Gaffney. In the alternative, plaintiffs assert such designation is so vague and uncertain as to be void, and thus the remainder falls into the residuary clause.

As to Owen Gaffney's will, plaintiffs contend that the ¼ share devised to Edward Gaffney lapsed and under section 49 of the Illinois Probate Act (Ill. Rev. Stat. 1959, chap. 3, par. 200) goes to the three remaining residuary legatees in proportions according to their respective interests in the residue.

The defendants James Gaffney and Eugene Kiernan, as surviving nephews of Owen Kiernan, each claim he was the

person described in the will as "the next eldest nephew surviving." Eugene Kiernan was born April 9, 1872 and James Gaffney was born September 20, 1874.

James Gaffney also contends that under the will of Owen Gaffney the residuary gift to himself and Edward Gaffney was a "class gift" and that he should receive the full share of Edward Gaffney as sole survivor of the class.

The trial court entered a decree finding that James Gaffney was the person described as the "next eldest nephew surviving" in the will of Owen Kiernan, and that the gift in the residuary clause of Owen Gaffney's will to "my two brothers, James Gaffney and Edward Gaffney" was a "class gift" and that James should receive the share of Edward.

In construing a will the pole star or guiding light is the intention of the testator as gathered from the language contained in the will and, if ambiguous, the circumstances surrounding the testator at the time of its execution. In construing the Owen Kiernan will we must ascertain, if possible, the meaning of the testator in the use of the phrase "my next eldest nephew surviving." There is no question that the identity of the contingent remainderman must be ascertained as of the death of the life tenant, Owen Gaffney, but the question of who Owen Kiernan intended to designate as contingent remainderman by use of the phrase in issue must be ascertained as of the date he executed the will.

With fourteen living nephews at the time the will was written and at the time of his death, Owen Kiernan selected his nephew Owen Gaffney to have a life estate in the 80-acre farm and selected Owen's wife and children, if any, to take the remainder. Owen Gaffney and his line were preferred over all others by the testator. Only if Owen Gaffney's line failed was "my next eldest nephew" to take. The gift over was substitutionary and the identity of the contingent remainderman could only be determined at the death

of the life tenant when it was possible for the first time to ascertain whether the primary remainderman existed. *Phelps* v. *Seeley,* 3 Ill.2d 210; *Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261.

What then do the words "next eldest" mean as used by Owen Kiernan? There is no question that "my" and "nephew" refer to a nephew of Owen Kiernan.

According to Webster's International Dictionary, 2nd Edition, Unabridged, the word "next" is defined closest; nearest in order; in the nearest time; immediately following, just after. The word "eldest" means oldest, eldest in years; most aged. Nowhere in this country do we find a single precedent that is helpful on this issue. The family involved in this litigation are of Irish descent and it is interesting to discover that Ireland produces the only authorities that considered language comparable to that under consideration. We cannot subscribe to appellants' contention that Owen Kiernan was prompted to the use of the disputed language by the legal pronouncements found in his native land. (*Crofts* v. *Beamish,* 2 I.R. 349, 1 B.R.C. 813 (1905); *Fitzgerald* v. *Fitzgerald,* 12 Ir. Ch. Rep. 422 (1861).) In both of the cited cases, under a different set of circumstances, the Irish courts construed "next eldest," in effect, to mean "next youngest."

From the remainder of the Kiernan will it appears that he knew and understood the English language and used it in its customary accepted meaning. There is nothing to indicate, and we do not believe Owen Kiernan, at the time he drew his will in 1921, was acquainted with the Irish decisions and used the words in the sense there interpreted, contrary to the common understanding and meanings attributed to such words in this country.

Not only does the trial court's construction of the Kiernan will give the words their most logical, common and customary meaning, but the result carried out the apparent

testamentary intent of Kiernan found from reading his entire will. It is our opinion that the trial court correctly construed the will of Owen Kiernan.

As to the construction and application of the residuary clause of Owen Gaffney's will under the circumstances existing, we must consider section 49 of the Illinois Probate Act (Ill. Rev. Stat. 1957, chap. 3, par. 200), commonly known as the anti-lapse statute. A 1955 amendment thereto provides in substance that where a residuary gift lapses and no provision is made in the will for that contingency, the property passes to the remaining residuary beneficiaries in proportion and upon estates corresponding to their respective interests in the residue. A 1957 amendment to the same section provides in substance, in addition to the foregoing and so far as is here pertinent, that where a devise is to a class and a member of the class dies before the testator, and no provision is made in the will for that contingency, the members of the class who survive the testator take the share which the deceased member would have taken.

The trial court concluded that the residuary paragraph of Owen Gaffney's will constituted two residues of equal parts, the first being a "class gift" to Gaffney's two brothers, and that under section 49 of the Probate Act James Gaffney as sole surviving member of the class took all of the "class gift." Was there a "class gift" and were there two residues?

In the Gaffney will the language relied upon to create a "class gift" is "to be paid in equal shares, to my two brothers, James Gaffney and Edward Gaffney of Ireland." It must first be noted that the language numbers and names the brothers, directs an equal distribution, and contains no provision for the benefit of the survivor.

The Illinois cases uniformly recognize the classical definition laid down in Jarman on Wills, 5th Am. ed., vol. 1, p. 534, that "A gift to a class is defined * * * as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future

time, and who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons."

One of the essential features of a class gift is that the number of the persons who are to take the property is to be ascertained at a future time. A gift to persons who are both numbered and named in the language of gift is *prima facie* or by initial presumption a gift to them as individuals notwithstanding they are also designated in general terms as by relationship to the testator or others.

Considering the fact that the instant will devises to two brothers of the testator, who are named, and that they are to take in equal shares, it seems clear that Owen Gaffney was thinking simply of his two brothers then living and not of a person or persons to be ascertained at a future time. In our opinion, nothing appears from the general plan of disposition, or from any special relationship of Owen Gaffney to his two brothers, or from the failure of Owen Gaffney to change his will after the death of Edward to overcome the initial presumption that the gift was to James and Edward as individuals. The gift to the two brothers in equal shares further strengthens this conclusion that a class gift was not intended by the testator. We conclude that the trial court was in error in holding that the residuary clause of Owen Gaffney's will made a class gift to the testator's two brothers, and that the 1957 amendment to section 49 of the Illinois Probate Act concerning class gifts has no application to the present case.

Although we have concluded that the first part of the residuary clause in Owen Gaffney's will did not constitute a "class gift," we must still determine whether the directions therein to divide the residue into two equal parts, one part to go to the two named brothers in equal shares and the other part to go to two charities equally constituted a subdivision of the residue, or a "residue of the residue."

There has been no decision by this court construing the

anti-lapse statute of Illinois. (Ill. Rev. Stat. 1957, chap. 3, par. 200.) Two scholarly and informative articles thereon have appeared in the Illinois Bar Journal (vol. 43, no. 11, July, 1955; vol. 49, no. 4, Dec., 1960). The latter article on "Disposition of Lapsed Gifts under Subdivided Residues" is particularly pertinent to the point here in issue. An example of such a problem as here presented is taken from *In re Slater's Estate*, 377 Pa. 285, 105 A.2d 59, and is briefly stated as "a testator leaves his residue ⅔ to A and ⅓ to B and C, and C predeceases the testator." The problem is which of the remaining legatee or legatees becomes entitled to the accrued share, and, if more than one legatee, in what proportions. The author notes that in applying the amended statute to cases of subdivided residues the nature of each division must be studied to determine whether the several divisions relate to the residue as an entirety or constitute preliminary and ultimate residues with the final division representing the "true" residue, or, as it is sometimes called, the "residue of the residue," in which case the amended section applies only as to the final division. As to the example given from *In re Slater's Estate* it is noted by the author that the court held the legacy was to each as a named person and not as a class, and that the subdivisions relate to the entire residue and not to particular residues that would bring into play the "true" residue doctrine. Under such decision, in the example given by the author of the article, A took ⅘ of the lapsed ⅙ and B ⅕ of the lapsed ⅙ interest.

To what extent is the Pennsylvania case persuasive here? The first article referred to, appearing in 43 Ill. Bar Journal 848, at page 850, notes that the portion of the Illinois anti-lapse amendment here in issue parallels closely similar provisions in the Pennsylvania statutes and the decisions of that State should be valuable as precedents in the interpretation to be given the terminology of our statute. We concur with such observation and comment.

From an examination of the residuary clause in Owen Gaffney's will it appears to us that the subdivisions therein relate to the entire residue and that there is no preliminary and ultimate residue so as to bring into play the so-called "true" residue doctrine. (See *Molner* v. *Silbert,* 8 Ill. App. 2d 388, for application of "true" residue doctrine.) The holding in *In re Slater's Estate* is most persuasive as to the conclusion in this case. In our opinion the ¼ residuary interest bequeathed to Edward Gaffney is distributable to and vests in each of the remaining three beneficiaries equally, since each of them was bequeathed one fourth of the residue. This appears to be the result intended by the legislature in its 1955 amendment to section 49 of the Illinois Probate Act. (Ill. Rev. Stat. 1957, chap. 3, par. 200.) The trial court was in error in its construction of the Owen Gaffney will.

Accordingly, the trial court is affirmed in part and reversed in part, and the cause is remanded for the entry of a decree not inconsistent with the conclusions herein reached.

*Affirmed in part and reversed in part and remanded, with directions.*