Harold Irish *et al.*, Plaintiffs-Appellees, *v.* H. J. Profitt *et al.*, Defendants—(Charles A. Fabb *et al.*, Defendants-Appellants.)

(No. 12642; )

Fourth District—May 22, 1975.

*Rehearing denied June 18, 1975.*

Stanhope & Holmes, of Chillicothe, Ohio and Warren Peters, Woods & Bates, and Harris & Harris, all of Lincoln, for appellants.

John R. Gehlbach, of Lincoln, for appellees.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendants appeal from an order of the circuit court of Logan County granting partition of 400 acres of farmland devised by Article III of the will of John Wilson Robinson, who died on September 8, 1907, and whose will was admitted to probate on October 21, 1907. The issue before this court is whether the trial court erred in its interpretation of Article III and in its disposition of the farmland.

In Article III, John Wilson Robinson (hereafter referred to as testator) devised life estates in the farmland in question to his nephew, Cincinnatus McLean, and to Benjamin and William McLean, children of the said Cincinnatus McLean. The testator further provided as follows:

"* * * at the death of the last surviving of said children [Benjamin and William McLean] and nephew [Cincinnatus Mc-Lean] said lands shall be divided among the descendants of the children * * * *and if no such descendants are then living said lands shall be equally divided among the other beneficiaries of this will * * *.*" (Emphasis added.)

It is established that the date of distribution of the Article III property was August 5, 1969, the date of death of the last surviving life tenant, William McLean. It is also established that all the named devisees in Article III have died with no descendants surviving them. Therefore, it

is agreed by all parties that said property "shall be divided equally among the other beneficiaries of this will * * *." It is the interpretation of this clause and the interests created thereby that is in dispute here.

It is first necessary to summarize the other relevant provisions of the will. Article II and Articles IV through VIII are similar to Article III in that they devise life estates in farmland to certain named legatees, usually a niece or nephew and his or her children or, at least, some of them. It is then provided that at the death of the last surviving named life estate legatee the land shall be divided among the descendants of certain named legatees, usually the descendants of certain children of the named niece or nephew. The life estate beneficiaries in Articles II through VIII of the will and their relationship to the testator are as follows:

1. James McLean, nephew
2. Frederick McLean, grandnephew
3. Lida C. McLean, grandniece
4. Mary Snyder, grandniece
5. Cincinnatus McLean, nephew
6. Benjamin McLean, grandnephew
7. William McLean, grandnephew
8. Maggie Stitt, niece
9. Wilse Stitt, grandniece
10. Don Stitt, grandnephew
11. Andrew P. Robinson, nephew
12. Elwynn P. Robinson, grandniece
13. Clark Robinson, grandnephew
14. Drew Robinson, grandnephew
15. John R. Bostwick, nephew
16. John W. Bryant, grandnephew
17. Lida Meyer, grandniece
18. Ione Bryant, niece
19. Annie S. Irish, grandniece
20. John W. Irish, great-grandnephew
21. Harold R. Irish, great-grandnephew

Article IX grants timber rights to 18 of the above named devisees in Articles II, III, and V through VIII for 5 years on the tract of farmland devised by Article IV to Maggie, Wilse and Don Stitt. Article XI bequeaths household furniture and various personal effects to Ione Bryant, a niece and life estate devisee under Article VII, and Annie S. Irish, a grandniece and life estate devisee under Article VIII. Article XIV is a residuary clause which states that, "I hereby wish and direct that all the stock agricultural implements and grain together with all other property

owned by me at the time of my death and not otherwise disposed of in this instrument shall be equally divided among the following * * *." There are 19 residuary legatees, all of whom were life estate devisees under Articles II through VIII, with the exception that John Bostwick is not a residuary legatee and Wilson Irish is added as a residuary legatee, and only Wilse Stitt and not her mother, Maggie Stitt, or her brother, Don Stitt, is named a residuary legatee. Article XVII devises any tract of land not disposed of to the owner of the land adjoining it (the life estate devisees under Articles II through VIII) upon the same terms as the adjoining land is given.

Article X makes specific bequests to named individuals none of whom were life estate devisees under Articles II through VIII or residuary legatees under Article XIV. These legatees, their relation to the testator, and the amount of their bequest is as follows:

1. Mary Milligan, sister, $50
2. Sarah McCoy, sister, $1000
3. Joseph McCoy, nephew, $300
4. Frederick Bostwick, nephew, $150
5. Darius Hicks, nephew, $200
6. Minnie Irish, grandniece, $200
7. Hannah Robinson, sister, $5
8. Heirs of Frank Hicks, nephew, $25
9. Mary Prather, niece, $50
10. Bell Eggleston, niece, $500
11. Mary Bostwick, grandniece, $50
12. Grace Bostwick, grandniece, $100
13. Nettie James, grandniece, $50
14. Charley McLean, grandnephew, $50
15. Nellie McLean, grandniece, $280

The instant action was initiated on January 6, 1971, when plaintiffs-appellees Harold Irish, John Irish, Clark Robinson, and Wilse Stitt filed a complaint for partition of the 400 acres of farmland devised by Article III of the will. An order for partition was entered by the Logan County Circuit Court on February 1, 1974. It is from this order that various defendants-appellants have perfected the instant appeal.

The trial court in its final partition order stated that since Benjamin and William McLean died leaving no descendants surviving, title to the land in question passed to "the other beneficiaries" of the will of John Wilson Robinson. The court also affirmed its previous ruling that:

"The court finds that it was not the intention of the testator that all persons who were named in the Will should share in the subject

real estate in the event the two nephews, Benjamin and William, died leaving no descendants. The clause 'if no such descendants are then living said lands shall be equally divided among the other beneficiaries of this Will' did not include all beneficiaries named in the Will."

The court then held that the land in Article III passed to those persons who received interests in farmland under Articles II through VIII of the will on the same basis that the real estate would have passed to them under each respective article of the will as of August 5, 1969, the date of distribution. Hence, those persons given a life estate in Articles II through VIII are given a life estate in the Article III property and the remaindermen are given a remainder in the Article III property. The court further stated that the individuals determined to be beneficiaries did not have to be alive on August 5, 1969, and that the shares of individual beneficiaries who died before that date should go to their heirs. Under the trial court's final order, the individuals receiving the Article III property and their respective shares are as follows:

1. Plaintiff-appellee John Irish (life estate devisee under Article VIII)—life estate in an undivided one-tenth interest with remainder to descendants who survive him.
2. Plaintiff-appellee Harold Irish (life estate devisee under Article VIII)—life estate in an undivided one-tenth interest with remainder to descendants who survive him.
3. Clark Lee Robinson (descendant of Elwynn Robinson, life estate devisee under Article V)—an undivided one-tenth interest (not a party to this appeal).
4. Plaintiff-appellee Clark Robinson (life estate devisee under Article V)—life estate in an undivided one-tenth interest with remainder to descendants who survive him.
5. Plaintiff-appellee Wilse Stitt (life estate devisee under Article IV) —life estate in an undivided one-tenth interest with remainder to descendants who survive her.
6. Plaintiff-appellee Donna Primm (descendant of Donald Stitt, life estate devisee under Article IV)—an undivided one-twentieth interest.
7. Plaintiff-appellee Margaret Barbre (descendant of Donald Stitt, life estate devisee under Article IV)—an undivided one-twentieth interest.
8. Defendant-appellant Charles Fabb (descendant of Lida Fabb, life estate devisee under Article II)—an undivided one-twentieth interest.

9. Defendant-appellant Hildreth Riddle Hume (descendant of Mary Snyder, life estate devisee under Article II)—an undivided one-thirtieth interest.

10. Defendant-appellant Mary Riddle Blizzard (descendant of Mary Snyder, life estate devisee under Article II)—an undivided one-thirtieth interest.

11. James Riddle (descendant of Mary Snyder, life estate devisee under Article II)—an undivided one-thirtieth interest (not a party to this appeal).

12. Defendant-appellant Albert Bryant (descendant of John Bryant, life estate devisee under Articles VI and VII)—an undivided one-tenth interest.

13. Defendant-appellant J. Robert Meyer (descendant of Lida Meyer, life estate devisee under Articles VI and VII)—an undivided one-tenth interest.

Defendants-appellants Charles Fabb, Hildreth Riddle Hume, Mary Riddle Blizzard, Albert Bryant and J. Robert Meyer contend before this court that the trial court erred by failing to interpret the term "other beneficiaries" as having created a class gift. It is contended that said class should be composed of the life estate devisees under Articles II through VIII and their descendants surviving the date of distribution. It is further argued that each class member surviving would receive an equal interest.

Defendant-appellant Ben Irish contends that the property should have passed by virtue of the residuary clause as stated by the trial court in its initial order of September 1, 1972. It is contended that since his mother was a residuary legatee (even though she predeceased the last life tenant of the Article III property), he is entitled to the share his mother would have received.

Defendants-appellants William M. Steffen and Walter C. Steffen contend that the term "other beneficiaries" creates a class gift composed of all the beneficiaries of the will. It is further contended that since their mother, Nellie McLean Steffen, was a beneficiary of $280 under Article X and since survivorship of class members is unnecessary, they should receive their mother's share.

Defendant-appellant Annette Haney contends that the term "other beneficiaries" includes all the beneficiaries named in the will and not merely individuals receiving real estate in Articles II through VIII. Hence, since her mother was Bell Eggleston, a beneficiary of $500 under Article X, and since she was devised all her mother's property, she should receive the share to which her mother would have been entitled.

■■ We find that the trial court was correct in rescinding its original

order providing for the distribution of Article III property under the residuary clause. Article XIV provides for distribution to various residuary legatees of "all the stock, agricultural implements and grain, together with all other property owned by me at the time of my death and *not otherwise disposed of* in this instrument \* \* \*." (Emphasis added.) Article III, however, represents a clear intention of the testator *to dispose of that particular property in a certain way.* Clearly, the residuary clause should not be interpreted so as to cover property not intended to be included therein by the testator, and such clause should be interpreted in connection with the rest of the will (*Strauss v. Strauss,* 363 Ill. 442, 2 N.E.2d 699; 36 I.L.P. *Wills* § 286, at 369 (1958)).

■■ We also agree with the trial court that the testator did not intend to include all persons named in his will within the category of "beneficiaries" under Article III. It is a cardinal rule in the construction of wills that courts must attempt to ascertain the intention of the testator and to give effect to that intention. (*Bradshaw v. Lewis,* 54 Ill.2d 304, 296 N.E.2d 747.) It is also well established that said intention of the testator must be ascertained from the entire will. (*First National Bank v. Wilmot,* 3 Ill.App.3d 128, 278 N.E.2d 204.) It is also true that technical words are presumed to be used in accordance with their technical meaning unless it clearly appears that they were not used by the testator in that sense (*Gridley v. Gridley,* 399 Ill. 215, 77 N.E.2d 146), and that the words of a testator must be given their ordinary meaning unless it clearly appears from the will that the words were used in a different sense (*Fatheree v. Gregg,* 20 Ill.2d 620, 170 N.E.2d 600). Our reading of the entire will here indicates that it was not the intention of the testator that the word "beneficiaries" in Article III should be read in its literal or technical sense. For instance, Hannah Robinson, a sister of the testator, was a legatee of $5 under Article X. Although she is literally a "beneficiary" under the will, it is clear that the testator did not intend her to be included in the group of beneficiaries under Article III for the testator states in Article X, "To my sister Hannah Robinson Five Dollars *and I do not wish my said sister Hannah Robinson shall receive from my estate any more than said sum of Five Dollars.*" (Emphasis added.) Likewise, Nellie McLean, a grandniece of the testator, was a legatee of $280 under Article X. Although she also is literally a "beneficiary" under the will, it is clear that the testator did not intend her to be included in the group of beneficiaries under Article III, for the testator states in Article III itself, "To my nephew Cincinnatus McLean and his children, namely, Benjamin McLean and William McLean (*his daughter Nellie not sharing herein*)." (Emphasis added.)

■■ It is then obvious that the testator did not intend every legatee

named in the will to be a beneficiary under Article III. The individuals that were the real objects of the testator's bounty were the 21 individuals who received life estates under Article II through VIII of the will and the descendants of certain life tenants who received the remainder interests in said farmland.

The 21 named individuals all received life estates in valuable farmland (over 3,000 acres) in Articles II through VIII. These individuals were all either a niece or nephew, a grandniece or nephew or a great-grand-nephew of the testator. Article IX grants timber rights to these same individuals on the tract of land devised by Article IV. Article XI bequeaths household furniture and various personal effects to Ione Bryant and Annie S. Irish, life estate devisees under Articles VII and VIII. Furthermore, 18 of these 21 named individuals were named residuary legatees, with the exception that John Bostwick is not a residuary legatee, and only Wilse Stitt and not her mother, Maggie Stitt, or her brother, Don Stitt, is named a residuary legatee. We do not believe that this minor inconsistency in the naming of the residuary legatees prevents us from concluding that these 21 named individuals were part of the intended beneficiaries within the meaning of Article III.

We also find that the descendants of certain of the 21 named life estate devisees were also intended by the testator to be included within the phrase "other beneficiaries of this will." Articles II through VIII of the will all provided that upon the death of certain of the life tenants the estates should go to certain of the descendants of the said life tenants. It is noted that the 21 named individuals all received life estates in the farmland whereas the descendants received remainder interest. No authority is needed for the proposition that a remainder interest is possibly a greater interest in land than a life estate interest, and that, therefore, these individuals should also be considered beneficiaries.

We further note in support of this conclusion that the 21 named life tenants were each restricted in their alienation of said property by Article XIII. That article stated as follows:

> "All the gifts and devises and bequests hereinbefore made were made upon the express condition that the party or parties to whom any thing or interest is given shall possess and enjoy such thing or interest so long as such party or parties shall in good faith endeavor to have each and every provision of this will fully carried out and shall not in any manner transfer sell or encumber in whole or in part or attempt to transfer sell or encumber in whole or in part or allow to be transferred sold or encumbered in whole or in part any such thing or interest to such party by this will given or assist therein prior to the distribution thereof in fee simple

provided for in this will and no longer and if any such party shall in any manner directly or indirectly by any means or method attempt or in any way assist in any attempt to prevent the full carrying out of any provisions of this instrument or shall in any manner transfer, sell or encumber in whole or in part or attempt to transfer, sell or encumber in whole or in part or allow to be transferred sold or encumbered in while [*sic*] or part any such thing or interest by this will to such party given or assist in any way therein prior to the distribution thereof in fee simple provided for in this will, all the rights of such party is and to such thing or interest so given to him or her *shall at once cease and thereupon shall go to and belong to the other beneficiaries mentioned in the clause by which such party was so given such thing or interest who shall thereafter hold such thing or interest in the same manner and upon the same terms as they hold the other matters given to them in such clause.*" (Emphasis added.)

This clause is further indication of the testator's intent to include the descendants of certain of the 21 named individuals under the term "other beneficiaries of this will." Although the 21 life tenants were stringently restricted in regard to the alienability of their estate, the descendants received a fee interest in remainder to do with as they wished. Furthermore, the testator in Article XIII specifically refers to these descendants as beneficiaries. For instance, in Article III if William and Benjamin McLean had, after the death of Cincinnatus McLean, mortgaged or transferred their life estate interest in any fashion, their shares would have gone to the other beneficiaries of Article III by reason of the express language of Article VIII that the interest alienated "shall go to and belong to the other beneficiaries mentioned in the clause \* \* \*." The only other beneficiaries in that clause would be the descendants. The same reasoning is true for Article II and Articles IV through VIII.

■■■ We hold that the trial court erred in finding that the words "other beneficiaries of this will" did not create a class gift. Whether or not a devise or bequest is to a class depends primarily on the language of the will (*Volunteers of America v. Peirce*, 267 Ill. 406, 108 N.E. 318), but the language is not controlling if the substance and intent indicate a different result (*Krog v. Hafka*, 413 Ill. 290, 109 N.E.2d 213.) A class gift is frequently defined as "a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." *Levings v. Wood*, 339 Ill. 11, 170 N.E. 767, 771; *Continental Illinois National Bank v. Eliel*, 17 Ill.2d 332, 161 N.E.

2d 107, 110; *O'Connell v. Gaffney*, 23 Ill.2d 611, 179 N.E.2d 647, 36 I.L.P. *Wills* § 247, at 339 (1958).

We find that the language of the devise to the "other beneficiaries of this will" indicates a class gift. We see no problem with the requirement of a gift of an aggregate sum for the 400 acres of farmland devised by Article III is clearly an aggregate sum. Another essential requirement is that the number of persons who are to take under the gift must be uncertain at the time of the gift and must only be ascertained at some future time. In the instant case, while the testator certainly knew the 21 named life tenants, he certainly did not know who their descendants would be, and said descendants could not be ascertained until some later time, *i.e.*, the date of death of the last life tenant, William McLean. Likewise, we see no problem with the requirement that the class members take in equal or in some definite proportions. The language of Article III states that "said lands shall be equally divided among the other beneficiaries of this will." Hence, each beneficiary would take in equal proportions. Furthermore, the share of each class member here is dependent for its amount upon the ultimate number of class members for we do not know how many descendants there will be, *i.e.*, the composition of the class, until the death of the last life tenant.

A class is normally considered to be a body or number of persons with common characteristics or in similar circumstances or having some common attribute, and, in relation to the devise, it generally means a number or body of persons "who stand in the same relationship to each other or to the testator." (*Strohm v. McMullen*, 404 Ill. 453, 89 N.E.2d 383, 385.) "Many other factors are to be considered to determine if a class is indicated by the will the fact that there is a natural class among the beneficiaries, the relation of the testator to the objects of his bounty; the subject matter of the gift; the skill of the draftsman of the will * * *." (*Continental*, at 110; *Krog*.) We find that further consideration of these relevant factors indicates that the substance and intent of the will was to create a class gift. We note that all the class members have common characteristics in that they are all either recipients of life estates under Article II through VIII of the will or are descendants of these individuals. In relation to the devise the class members have a similar relationship to each other or to the testator in that each class member is either a niece or nephew, grandniece or nephew or great-grandniece or nephew of the testator. A reading of the will as a whole clearly indicates that this line of relationships were the objects of the testator's bounty. The gift in the instant case then to said "other beneficiaries of this will" meets all the requirements for the creation of a

valid class gift, and both the language and substance of the will indicate such a disposition.

We note that the 1969 amendment to section 49 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 49) implies a condition of survivorship in all class gifts where the members of the class are not descendants of the testator unless the will expressly provides otherwise or unless the future interest becomes indefeasibly vested before it takes effect in possession. Hence, section 49 states:

> "Unless the testator expressly provides otherwise in his will * * *
> (2) When a devise or legacy of a present or future interest is to a class and any member of the class dies before or after the testator, the members of the class living when the devise or legacy is to take effect in possession or enjoyment, take the share or shares which the deceased member would have taken if he were then living, except that if the deceased member of the class is a descendant of the testator, the descendants of the deceased member then living take per stirpes the share or shares which the deceased member would have taken if he were then living * * *."

(See also Waggoner, *Future Interests Legislation: Implied Conditions of Survivorship and Substitutionary Gifts Under the New Illinois "Anti-Lapse" Provision,* 1969 U. of Ill. L. F. 423 (hereinafter cited as Waggoner).) Section 49, however, in its present context applies only to the wills of decedents dying on or after January 1, 1970. The decedent in the instant case died long before the effective date of the amendment to section 49. Whether a similar condition of survivorship should be implied here must then be decided under prior law.

We first note that the testator in Article III left the 400 acres of farmland to the three life tenants (Cincinnatus, Benjamin and William McLean) and the remainder to the descendants of Benjamin and William McLean, said remainder to vest in the surviving descendants of the last remaining life tenant. The testator further provided that "if no such descendants are then living, said lands shall be equally divided among the other beneficiaries of this will * * *." Since no descendants were living at the date of death of William McLean on August 5, 1969, the question is whether the members of the class "other beneficiaries of this will" should likewise be required to survive the death of the last life tenant. We hold that they should even though a condition of survivorship is not expressly stated by the testator.

In *Drury v. Drury,* 271 Ill. 336, 337, 111 N.E. 140, the testator provided as follows, " I give and bequeath to my grand-daughter, Myrtle A. Drury, the life use of the following piece of land * * * to have,

hold, use and enjoy the same during her natural life. At her death the fee simple title to all of said lands shall pass to and become vested in the heirs of her body, and in case of her death without a child or children the title thereto shall become so vested in my great-grandchildren * * *." At the death of the life tenant there were no children in existence. The court then held:

> "If it was a condition that the great-grandchildren should survive the life tenant when the members of the class would be finally determined and the estate would vest in them, no interest passed to Gertrude M. Dineen, because she was not a member of the class at the death of the life tenant. There was no language in the will which confined the gift to great-grandchildren in existence at the testator's death, *and the rule is that where the gift is not in terms immediate and so confined and a gift to a class is postponed pending the termination of a life estate, those members of the class, and those only, take who are in existence at the death of the life tenant * * *."* (Emphasis added.) (271 Ill. 336, 341.)

*Drury* was followed by our supreme court in *Continental Illinois National Bank & Trust Co. v. Eliel,* 17 Ill.2d 332, 161 N.E.2d 107. In *Continental* the testator gave a life estate to her nephew, Joseph A. Kulscar, of her interest in the B. Grossman estate. It was further provided that upon Kulscar's death the remainder interest should go to the issue of said nephew who survive him, and if no issue survive him, then to heirs of B. Grossman's estate. Kulscar died without issue. The court implied a condition of survivorship in the heirs and held as follows:

> "We have determined that the devise was one to a class, being those persons who were the heirs of the B. Grossman estate. The devise was contingent upon Joseph Kulscar's leaving issue surviving. The devise would not vest until Joseph Kulscar's death. No provision is made respecting the disposition of the contingent share of any member of the class, should he or she die prior to the vesting of the devise. The class was only ascertained with certainty upon the death of the beneficiary for life. No other provision being made, the gift to the class does not lapse as to any member who predeceased the vesting of the remainder, but the entire remainder estate vests in those who comprise the class on that date * * *. The class, in fact, is not actually ascertained until the happening of the contingency, hence there is no lapse, and there can be none, for nothing is vested in nor devised to any particular member of the class until the contingency occurs. * * * [citing *Drury*]." 17 Ill.2d 332, 340-41.

The *Drury* rule remained a rigid rule of construction for 50 years until

our supreme court's opinion in *Hofing v. Willis*, 31 Ill.2d 365, 201 N.E.2d 852 (1964). In *Hofing* two warranty deeds conveyed interests in separate tracts of property to George and Edna Wittlinger and "at the death of the said George Wittlinger and Edna Wittlinger his wife the said lands herein described shall revert to the heirs of the body of the said George Wittlinger. In case there be no heirs then the said lands shall revert to the sisters of the said George Wittlinger and to their heirs and assigns forever." The court stated that George and his wife acquired a joint life estate and that the subsequent gifts over were alternate contingent remainders. At the death of the last life tenant there were no heirs of the body of George Wittlinger and all of George's sisters had predeceased him. The court stated that the sisters were given a class gift and stated in regard to the *Drury* rule as follows:

"We therefore disapprove the *Drury* case and others purporting to follow it insofar as they announce as a mechanical and universal rule of construction that a class gift of a future interest which was contingent on an event other than survivorship is also contingent on survivorship. Subject to statutory prohibitions and considerations of public policy, the owner of property should be able to create such interest in his grantees as he wants them to have. There are no statutory prohibitions or policy considerations that militate against the creation of a transmissible interest in the sisters of George Wittlinger if that is what the grantor intended." (31 Ill.2d 365, 373.)

The court went on to state that it was then necessary to determine what type of interest the grantor intended to transfer to the contingent remaindermen "to the sisters of the said George Wittlinger and to their heirs and assigns forever." The court then stated:

"* * * In determining the effect of the deeds, we see no justification for completely rejecting the last seven words in each deed, 'and to their heirs and assigns forever', thus refusing to give effect to all of the words of the instrument.

* * *

* * * We believe that these words, as used in these deeds, combined with all the other circumstances of this case, indicate that the interests of George's sisters should be considered to be of an inheritable quality. We therefore hold that the sisters' interests were not contingent on survivorship but were descendible and passed as part of the sisters' estates * * *." 31 Ill.2d 365, 374, 375.

We are aware that the common-law rule is that conditions of survivorship are not implied unless expressly stated. The reason that survivor-

ship is not required beyond the testator's death is that future interests are not interests which happen to arise in the future, but are present interests in which possession is postponed and, in some instances, uncertain. (Waggoner, *supra*, at 425.) Our analysis of Illinois law, however, indicates that the *Drury, Continental,* and *Hofing* cases have changed the common-law rule and *in some instances* conditions of survivorship may be implied. (The amendment to section 49 of the Probate Act is further indication of a present legislative intent that implied conditions of survivorship should continue in certain instances even as to decedents dying after January 1, 1970).

The facts and circumstances of the instant case indicate that such a condition of survivorship should be implied, and that a member of the class must have survived the death of William McLean, the last life tenant of the Article III property, who died without descendants on August 5, 1969. We find that the interests created in Article III are life estates followed by alternate contingent remainders in the descendants of Benjamin and William McLean and in the "other beneficiaries of this will." We note that the testator expressly provided for a condition of survivorship in the first contingent remainder to the descendants of the last life tenant. The testator stated in this regard "if no such descendants are then living said lands shall be equally divided among the other beneficiaries of this will * * *." This is some indication that the testator intended to also imply a condition of survivorship in the second group of remaindermen. Furthermore, the factual situation here is similar to that in the *Continental* case, where the testator expressly provided for a condition of survivorship in the first group of takers, *i.e.* "issue of said nephew who survive him," but was silent as to whether the second group of takers need also survive the death of the life tenant. The court there held that an implied condition of survivorship should be implied. We note that there, as here, the first group of takers were expressly required to survive the death of the life tenant and that the contingent remainder in the class would not vest or be ascertained with certainty until the death of the life tenant. We further find that the instant case is distinguishable from the *Hofing* opinion. In *Hofing* the interests created were also life estates followed by alternate contingent remainders, and the court refused to imply a condition of survivorship in the second group of takers. However, in *Hofing* there was no express condition of survivorship that the first group of takers survive the death of the life tenant, and the court clearly emphasized the wording of the gift to the second group of takers, "to the sisters of the said George Wittlinger *and to their heirs and assigns forever."* (Emphasis added.) The court stated that these words combined with the other circumstances of the case indi-

cate that the gifts to George's sisters were of an inheritable quality and were not contingent on survivorship. There are no such words in the instant situation.

As further support of this conclusion we note that the testator provided that the Article III property should be divided *equally* among the other beneficiaries of the will. This wording is also an indication that the testator intended that the members of the class survive the death of the life tenant. To hold otherwise would mean that some class members at the death of the life tenant would receive a greater share than others. For instance, Donna Primm would possibly receive three shares—one share in her own right as a descendant of a named life tenant, one through her deceased father, Donald Stitt, a named life tenant, and one through her deceased grandmother, Maggie Stitt, also a named life tenant.

██ We. therefore hold that the interests created by Article III were life estates followed by alternate contingent remainders. We find that the interests of the second group of remaindermen, "the other beneficiaries of this will," vested upon the death of William McLean without descendants on August 5, 1969. We find that a class gift was created in the second group of remaindermen, and that the members of the class included the 21 named life estate beneficiaries in Articles II through VIII of the will and the descendants of certain of these life tenants. We further find that there was an implied condition that these class members survive the death of William McLean in order to take an interest in the Article III property. We find that the Article III property is to be divided equally among said surviving class members.

Accordingly, for the reasons stated above this cause is hereby remanded to the circuit court of Logan County for further proceedings in accordance with the views expressed herein.

Reversed and remanded with directions.

GREEN and CRAVEN, JJ., concur.