(No. 33150.—▇▇▇▇▇▇▇)

ARCHIBALD D. SHAMEL, *et al.*, Appellees, *vs.* FAY BREMER SHAMEL, *et al.*—(RICHARD SHAMEL, *et al.*, Appellants.)

*Opinion filed September 23, 1954.*

426

CLARK H. MILEY, of Taylorville, for appellants.

DRACH & HOWARTH, of Springfield, (HERSHEY & BLISS, of Taylorville, of counsel,) for appellees.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

A direct appeal to this court from a decree of the circuit court of Christian County, wherein a trust was declared of certain Christian County real estate and a trustee appointed thereof and .directed to sell at private

sale coal rights therein, pursuant to section 50 of the Chancery Act, (Ill. Rev. Stat. 1953, chap. 22, par. 50,) is taken by the guardian *ad litem,* trustee for persons not in being and attorney for defendant in the military service, pursuant to leave granted.

A freehold being involved, the appeal is properly taken directly to this court.

The facts, as established by plaintiffs' evidence, are undisputed. On February 15, 1900, a trust was created by a written agreement executed by five individual settlors, who were the owners in common of about 700 acres of land in Christian County and other real estate. The subject matter of this proceeding is the coal beneath the surface of three tracts of said trust real estate situated in Christian County. Since 1931 the trust has been administered under jurisdiction of the circuit court of Christian County as the Conrad Shamel and Caroline Shamel Trust Estate, and at the time of the institution of the present litigation Springfield Marine Bank of Springfield, appellee herein, was successor trustee thereof by appointment of the court. The present action was instituted by the trustee and certain other beneficiaries, as plaintiffs, against the other beneficiaries and other parties who constitute all persons in being who have or may have an interest in the trust, by petition for appointment of a trustee to sell coal and mining rights pursuant to section 50 of the Chancery Act.

Under the trust agreement the five settlors conveyed to Caroline Shamel, as trustee, their fee interests in the trust property. An equal share of the net trust income was to be paid to each settlor during his or her lifetime. The share of Caroline Shamel in the trust income and *corpus* was to terminate at her death. The trust was to continue until twenty-one years after the death of the survivor of whichever of the four settlor-beneficiaries should live the longest, and then terminate. Each of the four settlor-beneficiaries could by will direct and appoint to whom his

share of the net income should be paid after his death for the remainder of the term of the trust. If a settlor-beneficiary should die, without by will exercising his power of appointment, then his share of the income should be paid to his surviving widow, children and descendants, or if none, to the surviving settlor-beneficiaries for the remainder of the term of the trust. Upon termination of the trust the title to the one-fourth interest of each settlor-beneficiary in the trust property should vest in fee in such person or persons as he had by will directed and appointed, or if any settlor-beneficiary failed to exercise his power of appointment his interest should descend and vest in accordance with the laws of descent of Illinois then in force. The trust agreement contained other provisions for execution of the trust, including a limited power to mortgage for the purpose of buying real estate and a limited power to sell on written request of the adult beneficiaries, provided the trustee had made a written contract for purchase of other real estate of equal or greater value than the real estate to be sold and to be held on the same terms.

The settlor Caroline Shamel had died on April 21, 1931. The settlor-beneficiary Clarence A. Shamel had died testate on January 7, 1931, and by his will he exercised the power of appointment provided for in the trust agreement, devising and bequeathing his interest in the trust income and *corpus* to his children and widow in equal parts.

The settlor-beneficiary J. Young Shamel had died intestate on September 29, 1934, leaving surviving his widow and three sons, which three sons each had wives, children and grandchildren. The remaining two settlor-beneficiaries are living, one of whom has a wife and three children, which children are married and have wives and children. The other living settlor-beneficiary has never been married, has no child or descendants, and is an incompetent person with conservator.

All persons in being, who have or may have an interest in the trust, are parties defendant and appellant Clark Miley was appointed guardian *ad litem* for minor and incompetent defendants, trustee for persons not in being and not presently identified, under section 6 of the Chancery Act, and attorney for defendant in the military service.

A mineable vein of bituminous coal exists below the surface of each of the tracts of trust real estate in question. Peabody Coal Company and Wabash Railroad Company own all of the coal underlying several thousand acres of land contiguous to each of the tracts in question and surrounding each of the tracts in question. Peabody Coal Company is constructing a new coal shaft mine to mine its coal and the coal of the Wabash contiguous to and surrounding the tracts in question and is sinking its shaft about one mile west of one of the tracts.

Peabody has plans for the new mine which would permit it to mine the coal underlying the tracts in question provided it obtained title thereto with mining rights therein before its workings reach the boundaries of that tract, and if Peabody does not obtain such title to the said coal said tracts will be by-passed. Said tracts in question are not large enough to justify the sinking of a mine solely to obtain the coal underlying each of said tracts, and if Peabody and Wabash do not obtain title to the coal underlying the tracts in question the mineability of said tracts will be forever lost, which loss will occur a long time prior to the termination of the Shamel trust and the time when the interests of the parties to the litigation will be determined. Peabody and Wabash have offered to purchase at private sale all coal and such other minerals as are mixed with and accompanying the coal and as would necessarily be mined and removed in mining and removing the coal, for a cash consideration of $65 per acre and to pay the cost of this litigation, provided a merchantable title thereto can

be obtained. The uncontroverted evidence establishes that the price of $65 per acre is the full, fair, cash market value of the coal, mineral and mining rights in issue and that the mineability thereof will be forever lost unless mined in conjunction with the mining of the coal underlying the acreage owned by Peabody and Wabash.

The trial court decree granted relief as prayed in the petition and declared the trust, appointed Springfield Marine Bank as trustee, vested title to coal and other minerals aforesaid and mining rights in the tracts in question in said trustee and directed the trustee to sell the same at private sale for cash to Peabody and Wabash at the prices stated and to make conveyances, reports of sale and investment of proceeds as directed by the court for the benefit of the persons entitled or who may become entitled thereto.

The appeal assigns two errors as a basis for reversal. First, that section 50 of the Chancery Act does not permit the appointment of a trustee with reference to a future interest arising by the exercise of a power of appointment and that the circuit court has no power or jurisdiction to appoint a trustee under such section. Second, that the sale authorized by the trial court was in contravention of and deviation of the terms of the trust instrument.

Appellees' answers to these two assignments of error are likewise two in number. First, that section 50 of the Chancery Act applies to the future interests which arose under the trust instrument in question, and the fact that said instrument contained a power of appointment does not alter its application nor the jurisdiction of the court to render the decree in question. Second, that the uncontradicted evidence conclusively shows that the beneficiaries of the trust would have suffered a total loss in the trust estate and that such facts permit the court in equity to deviate from the trust instrument.

Insofar as applicable to the present litigation, section 50 of the Chancery Act provides as follows: "Where lands

or any estate therein are subject to contingent future interest, legal or equitable, whether arising by way of remainder, reversion, possibility of reverter, executory devise, upon the happening of a condition subsequent or otherwise, and whether a trust is involved or not, and it is made to appear that such lands or estate are liable to waste or depreciation in value, or that the sale thereof and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto, or that it is otherwise necessary for the conservation, preservation or protection of the property or estate or of any present or contingent future interests therein that such lands or estate be sold, mortgaged, leased, converted, exchanged, improved, managed or otherwise dealt with, the court shall have power, pending the happening of the contingency and the vesting of such future interests, to declare a trust, and to appoint a trustee or trustees for such lands or estate and to vest in a trustee or trustees title to the property, and to authorize and direct the sale of such property, either at public sale or at private sale, and upon such terms and conditions as the court may direct, and in such case to authorize the trustee or trustees to make such sale and to receive, hold and invest the proceeds thereof under the direction of the court for the benefit of the persons entitled or who may become entitled thereto according to their respective rights and interests, * * *."

Appellants' argument that under the above statute the trial court has no jurisdiction to enter the decree appealed from is based upon the fact that the statute enumerates the specific types of contingent future interests wherein the statutory provision is applicable, that the enumeration in a statute of specific estates or things excludes other estates or things not mentioned, and that words such as "otherwise," when preceded by a specific enumeration, are to be given a restricted meaning to cover only things of the same nature as those enumerated.

Although such statements of general principles as to statutory construction are correct as general statements, (*Blakeslee's Storage Warehouses, Inc.* v. *City of Chicago,* 369 Ill. 480; *Ritchie* v. *People,* 155 Ill. 98,) yet in determining and giving effect to the legislative intent, as expressed by the statutory language, there are exceptions to such general rules, as was stated in *Springer* v. *Philippine Islands,* 277 U.S. 206, 72 L. ed. 851, where the modification of such rule was stated as follows: "Like other canons of statutory construction it is only an aid in the ascertainment of the meaning of the law and must yield whenever a contrary intention on the part of the law makes it apparent. Where a statute contains a grant of power enumerating certain things which may be done and also a general grant of power which, standing alone, would include these things and more, the general grant may be given full effect if the context shows that the enumeration was not intended to be exclusive."

The basic question determinative of the jurisdiction of the trial court, under the statute in question, is whether or not the trust instrument, establishing the Shamel trust, created a contingent future interest within the legislative intent of section 50 of the Chancery Act. Appellants' assertion that a power of appointment is not among the enumerated types of future interest contained in the statute, so as to give jurisdiction thereunder, is not well taken because a power of appointment does not in itself create a future interest in property.

In *Botzum* v. *Havana Nat. Bank,* 367 Ill. 539, a suit was brought in the circuit court of Mason County to terminate a trust created by deed of trust and to require the bank to convey the trust property to the beneficiaries. Under the trust there in litigation the bank was to hold and manage the trust property during the lifetime of Myrtle H. Botzum, to pay the income thereof to her during her lifetime, and upon her death the *corpus* and ac-

cumulation, if any, of the trust, were to be paid to such persons and in such shares or in trust, as such life beneficiary should, by her last will, designate and appoint, and in default of such appointment the trustee was to pay the same to two named individuals, share and share alike, or, in the case of the death of either prior to the death of the life beneficiary, then their share to go and descend to their heirs-at-law. The life beneficiary had two children and one of the devisees, under the gift over, on failure to exercise the power of appointment, was married. Such devisees, under the gift over, entered their appearance and consented to the dissolution of the trust. The trustee appealed from the decree terminating the trust, to protect the trust and itself against claims of persons who might have contingent interests. The appellants contended that the trust could not be terminated because the husband and other possible heirs of devisees under the gift over and possible appointees under the power of appointment had contingent interests in the trust and were not made parties to the proceeding and had not consented to terminating the trust. In holding that all parties in interest were before the court and in affirming the trial court, it was held that under such trust there were no holders of contingent interests or beneficiaries under legal disability so as to prevent termination of the trust but that the settlor and all beneficiaries in that case were *sui juris* and consenting so as to compel termination of the trust although the purposes had not been fully accomplished. In so holding it was conceded that the life beneficiary under the trust and the donee of the power of appointment to be exercised by her in her last will represented her own appointee as fully and completely as anyone having a future contingent interest could be represented and that until she died it was impossible to determine with finality whether there would be an appointee and if so, who. In so holding it is said, at page 543: "We have held that no title or interest in the

thing vests in a donee of a power by the creation of that power alone. It amounts to a virtual offer to him of the estate or fund and he may accept or reject it at will, and no title can vest thereby until he accepts the offer. (*Gilman* v. *Bell,* 99 Ill. 144, 150, 151; *Bradford* v. *Andrew,* 308 id. 458, 462.) If the existence of a power adds nothing to the estate or interest of the donee until he exercises the power, although it is general and may be exercised for his own benefit or the benefit of his estate, it likewise creates no title or interest in his appointee until the power is fully exercised. (*McFall* v. *Kirkpatrick, supra.*) The possible appointees under the general power given Myrtle H. Botzum have no title or interest in the *corpus* of the trust."

Thus the possible appointees under the power of appointment contained in the trust instrument here in question had no contingent future interest or title in the trust estate and appellants' contention that a contingent future interest created by a power of appointment is outside the scope and meaning of section 50 of the Chancery Act is fallacious.

The net result of the *inter vivos* trust declaration or deed was to create or establish a fee simple title to the trust estate in the trustee, which fee simple estate in the trustee was to terminate at a specific time in the future. At such future termination date the fee simple title to the property was to vest in the heirs-at-law of each of the settlor-beneficiaries, according to the laws of descent of Illinois then in force unless each of said settlor-beneficiaries had otherwise appointed the fee by exercise of the testamentary power of appointment vested in each of them by the trust instrument.

Without attempting to specifically classify the exact nature of the future interest created, a reading of the statutory language in question indicates a general legislative intent to permit lands which are subject to contingent interests of any kind, under proper circumstances, to be

sold and placed back into the channels of commerce and that the legislature, by the use of the word "otherwise," intended to include in the section not only those types of contingent future interests which were well known at common law, but also every possible future interest, legal or equitable, which existed at common law or which now exists by judicial or legislative evolution in the law of future interests.

We accordingly conclude, for the reasons above stated, that section 50 of the Chancery Act does apply to the type of future interest created by the trust instrument in issue.

As to the other question as to whether or not a court of chancery had power to authorize the deviation from the provision of the trust instrument, the uncontradicted fact, as established by the undisputed evidence, that the beneficiaries of the trust and the ultimate owners of the trust *corpus*, on the termination of the trust, will suffer a total loss of the mineability of the coal constituting a part of the trust estate, is conclusive of the power of the courts to so decree a deviation. Even prior to the adoption of section 50 of the Chancery Act the courts of chancery had power to permit deviation from a trust instrument when a contingency arose in which the estate of the beneficiaries would be totally lost. (*Cary* v. *Cary*, 309 Ill. 330; *Dyer* v. *Paddock*, 395 Ill. 288.) The amendment of 1929 to section 50 of the Chancery Act conferred a broader and wider power on chancery courts than had previously been granted by enlarging the scope of the act so as to permit a sale of lands when it is made to appear that such lands or estate are liable to waste or be depleted in value or that the sale thereof and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto. Mere benefit to the beneficiaries was not enough prior to such amendment, but the necessity for protection or preservation of the estate for prevention of a total loss to the estate had to be established. The enlarged

scope of section 50 of the Chancery Act, as amended, gives power to the circuit court to authorize the deviation when the evidence shows that the lands are liable to waste and depreciation in value, or that a sale will benefit the persons entitled to the estate. The undisputed facts in evidence clearly establish the fact that failure to recover the coal underlying the premises in question will constitute waste or depreciation in value of a portion of the trust property and that the proposed sale will inure to the benefit and advantage of the beneficiaries entitled to the trust property. The trust instrument shows a clear intention that the settlor-beneficiaries should receive the full income and benefit of the land and this intention is defeated by any interpretation which permits a part of the lands included in the trust to be wasted or to be lost. At the time of the execution of the instrument the intent was undoubtedly to preserve the full income and benefit from the agricultural production of the land surfaces. This basic purpose is not defeated by permitting the sale here in question because the surface area of the agricultural land in the trust continues therein and its productive ability is not affected by the severance of the coal and mineral rights therefrom. Since it conclusively appears that the trust beneficiaries will completely lose the value of such coal underlying the real estate unless it is sold, such loss is proper ground for deviation from the terms of the trust instrument, under the law, both as enunciated by the courts as a matter of common law, and as specifically authorized by the passage of section 50 of the Chancery Act.

The decree of the trial court is affirmed.

*Decree affirmed.*

Mr. JUSTICE HERSHEY took no part in the consideration or decision of this case.