DELMAR W. DURDLE, Ex'r of the Estate of Clarence G. Miller, Deceased, Plaintiff-Appellee, v. DELMAR W. DURDLE, Ex'r of the Estate of Lawrence F. Miller, Deceased, *et al.*, Defendants (Karla Mae Bartels, Defendant-Appellant).

Fourth District   No. 4—91—0489

Opinion filed January 16, 1992.

Charles K. Smith, of Grosboll, Becker, Tice, Alvarez & Smith, of Petersburg, for appellant.

Don P. Boggs, of Boggs & Knuppel, P.C., of Havana, for appellee.

JUSTICE LUND delivered the opinion of the court:

A trust beneficiary, Karla Mae Bartels, filed a petition to convert the trust real estate to an asset generating greater income. The trial court dismissed the petition. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619.) The beneficiary now claims on appeal that (1) the trustee's motion to dismiss should not have been granted; (2) the trust instrument does not preclude sale of the real estate; and (3) even if the trust did preclude sale of the real estate, the court has authority to order a sale.

The trust involved in this case was established by the will of Clarence G. Miller, who died on October 23, 1982. The will provides the trustee is to pay the trust's income to Clarence's brother, Lawrence, for the remainder of his life. Lawrence died prior to the closing of Clarence's estate. Upon Lawrence's death, the will directed the trustee:

"(1) To pay the net income of the trust at least annually in equal shares to Verla Hill and Karla Mae Bartels.

(2) At the death of Verla Hill or Karla Mae Bartels, the decedent's share shall be paid to the decedent's children. If either Verla Hill or Karla Mae Bartels dies without children surviving them, then that share shall be paid to the survivor of Verla Hill and Karla Mae Bartels."

The will contains additional provisions for distribution of the trust income and real estate subsequent to the death of Hill and Bartels which do not concern us here.

The will further directs the trustee to employ William L. Durdle, the trustee's son, to farm the real estate owned by the trust "on the customary crop share basis so long as he shall farm the said land in a husband-like manner." The will also gives the trustee several other powers which will be further explained.

Since establishment of the trust, the beneficiaries have received approximately $7,500 each. Hill has objected to every annual trust accounting since its inception. This court heard the appeal of the first accounting; we remanded with instructions to correct only minor defects in the accounting, but affirmed the trial court's acceptance of the accounting in all other respects. (*Durdle v. Durdle* (1986), 141 Ill. App. 3d 12, 489 N.E.2d 1142.) In 1989, this case was again before our court. At issue again was whether the trustee had mismanaged the trust property to an extent which would require his removal. (*Durdle v. Durdle* (1989), 187 Ill. App. 3d 1126 (unpublished order under Supreme Court Rule 23).) The issues were substantially similar to those of the first appeal. This court held that Hill's claims were barred by the doctrine of collateral estoppel. *Durdle*, 187 Ill. App. 3d 1126 (slip Rule 23 order at 15).

Beneficiary Bartels claims that the trustee's motion to dismiss her petition to convert the real estate should not have been granted. We disagree.

The portion of the petition to convert assets of testamentary trust relevant to this opinion are as follows:

"5. That Delmar W. Durdle was named as trustee of said Testamentary Trust and is presently acting as said Trustee.

6. That since the establishment of said Testamentary Trust in 1985, the two sole beneficiaries have received from 1985 through 1989, approximately $7,500.00 each in distributions from said Trust.

7. That the annual distributions to each beneficiary from said Trust have averaged approximately $1,250.00.

8. That the fees paid to Don Boggs, attorney for the Estate of Clarence G. Miller, Deceased, as well as fees paid to him for acting as attorney for the Trustee, have now exceeded the sum of $12,903.16.

9. That fees paid to Delmar W. Durdle as Executor of said estate and as trustee for said Trust have now exceeded the sum of $7,801.00.

10. That there are still outstanding amounts due said attorney for said Trust and said Trustee with regard to the filing of Current Reports herein and with regard to litigation involving said Trust.

11. That objections to each Current Account filed herein have been filed by beneficiary Verla Hill.

12. That objections have also been filed herein by beneficiary Karla Mae Bartels.

13. That there have been numerous and lengthy Court proceedings with regard to said objections.

14. That beneficiary Verla Hill has taken her objections to the Appellate Court and there have been numerous and lengthy proceedings therein.

15. That there will continue to be numerous and lengthy legal proceedings herein resulting in further attorneys fees and Trustee's fees to be paid from the Trust.

16. That the objections to the accountings herein primarily relate to the Trustee's manner of renting and farming Trust farm real estate, and lack of farm management abilities to provide reasonable and adequate trust income.

17. That the primary asset of said Testamentary Trust is approximately 80 acres of farm real estate, which asset is not sufficient to generate a reasonable amount of annual income so as to justify continuation of the Trust in its present form.

18. That the intended purpose of the Trust, as is evident from its terms, is the production of income for the beneficiaries of said Trust.

19. That as is evident from the proceedings herein, the only people benefiting from said Testamentary Trust are the attorney[s] for the Trust and the Trustee.

20. That the Trustee has a vested interest in the continuation of the Trust in its present form in that his son farms said real estate.

21. That nowhere in the terms and provisions of said Trust does it prohibit or prevent the sale of said farm real estate nor is there any statement therein whereby the testator requires that the real estate remain unsold during the term of said Trust.

22. That beneficiary Bartels' share of income proceeds from the Trust are annually being reduced by the ongoing legal expenses related to the Trust.

23. That setting aside said expense, the Trust fails to produce reasonable and sufficient income to justify its continuation in its present form."

The trial court's ruling provided:

### "MEMORANDUM OF OPINION

For purposes of this motion the Court assumes (without deciding) that petitioner Bartels can prove each factual allegation (excluding legal conclusions) of the October 31 Petition to Convert Assets of the trust by a preponderance of the evidence.

Even assuming such proof the Court would not be authorized to grant the prayer of the petition. A reading of the trust instrument makes it clear that a changing of the trust assets would completely frustrate the intent of the testator.

An additional reason exists for dismissing the Petition to Convert Trust Assets. The same parties litigated a petition to terminate the same testamentary trust which resulted in a final appealable order in early 1990. There is absolutely no reason why the prayer for relief presented in the October 31, 1990[,] petition could not have been litigated in the earlier proceeding upon the petition to terminate the trust. Substantially the same allegations and issues were raised in each petition.

### ORDER

This cause is before the Court upon the motion to dismiss the Petition to Convert Trust Assets, and the Court having heard the arguments of Counsel and having examined the briefs of Counsel and being fully advised of the premises, hereby enters an Order dismissing the Petition to Convert Trust Assets for the reasons set forth in the Court's Memorandum of Opinion."

The beneficiary contends that the decedent's will did not preclude the sale of the real estate.

■■ A court's primary concern in construing a trust instrument is to discover the intent of the settlor when he executed that instrument. (*Williams v. Springfield Marine Bank* (1985), 131 Ill. App. 3d 417, 475 N.E.2d 1122.) After first viewing the language of the trust itself, a court may then consider the surrounding circumstances at the time of the execution to determine the settlor's intent. *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 500 N.E.2d 29.

However, if the instrument creating the trust contains language that is unambiguous and perfectly clear, then the intent must be ascertained from that language. (*Estate of Sacks* (1967), 89 Ill. App. 2d 1, 11, 231 N.E.2d 688, 694.) The instrument must be considered as a whole, and the provisions are not to be read in isolation. *In re Support of Halas* (1984), 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964.

■■ In the instant case, the beneficiary claims that had the settlor intended to expressly preclude the sale of the real estate, it is apparent that he would have stated such in his will. Upon examination of the will, it is clear that the testator did not intend to have the real estate sold.

The will provided specific measures to be used in dealing with the real estate. It directed the trustee to employ William Durdle to farm "my farm real estate on the customary crop share basis so long as he shall farm the said land in a husband-like manner." The will also stated:

> "With respect to farm property, plant and harvest crops; breed, raise, purchase and sell livestock; lease on shares; purchase and sell equipment and farm produce of all kinds; make improvements, construct, repair or demolish any building; engage agents, managers, and employees and delegate powers to them; set up reasonable reserves for depreciation out of income to replace improvements and equipment; to fertilize and improve the soil, to engage in the growing, improvement and sale of trees and other forest crops, and to perform any other acts deemed necessary or desirable to operate the property."

Further, it provided the trustee shall rent or lease the residence held in trust to a family unit. If William Durdle became unable to farm the real estate, the real estate was to be rented under the same terms and conditions to another farmer, excluding certain individuals. Finally, the will required that the trust terminate 20 years after the date of the death of the last of the surviving named beneficiaries.

It is true, as the beneficiary argues, that the testator did not specifically state that the real estate should not be sold. Given the above-cited provisions, however, it is clear that the testator did not intend the land to be sold.

Finally, the beneficiary contends that even if the will is interpreted as forbidding the trust real estate from being converted, the court still has the authority to do so. We conditionally agree with the beneficiary; however, this is not one of those cases.

■ Section 17.1 of the Trusts and Trustees Act (Act) (Ill. Rev. Stat. 1989, ch. 17, par. 1687.1) applies to the instant case. It states, in pertinent part:

> "Where lands or any estate therein are subject to any legal or equitable future interest of any kind or to any power of appointment, whether a trust is involved or not, and it is made to appear that such lands or estate are liable to waste or depreciation in value, *or that the sale thereof and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto,* or that it is otherwise necessary for the conservation, preservation or protection of the property or estate or of any present or future interest therein that such lands or estate be sold, mortgaged, leased, converted,

exchanged, improved, managed or otherwise dealt with, the court may *** authorize and direct the sale of such property, either at a public sale or at private sale, and upon such terms and conditions as the court may direct, and in such case may authorize the trustee or trustees to make such sale and to receive, hold and invest the proceeds thereof under the direction of the court for the benefit of the persons entitled or who may become entitled thereto according to their respective rights and interests ***." (Emphasis added.)

The beneficiary claims that the emphasized statutory language gives the court carte blanche to order a sale of trust assets if it will be beneficial to the trust beneficiaries. To support this contention, the beneficiary relies on this court's holding in *American State Bank v. Kupfer* (1983), 114 Ill. App. 3d 760, 449 N.E.2d 1024.

In *Kupfer*, this court determined that a certain 1929 amendment to the provision which was the predecessor of section 17.1 of the Act (Ill. Rev. Stat. 1981, ch. 17, par. 1687.1) and *Shamel v. Shamel* (1954), 3 Ill. 2d 425, 121 N.E.2d 819, widely broadened the court's power to order a sale of trust assets. The beneficiaries neglect to acknowledge that *Kupfer* declines to construe section 17.1 of the Act so broadly as to annul all restraints on alienation found in trust instruments or to allow current beneficiaries to profit at the expense of future beneficiaries. *Kupfer*, 114 Ill. App. 3d at 768, 449 N.E.2d at 1029.

■ The statute and prestatute case law recognized in *Kupfer* indicates that "judicial intervention is appropriate only when there has been a change in circumstances affecting the trust which was unforeseen by the donor, and any resulting order must be tailored to implement the intention of the donor." (*Kupfer*, 114 Ill. App. 3d at 768-69, 449 N.E.2d at 1029-30.) In the instant case, there has been no change in circumstances involving the trust property. The beneficiary's sole reason for desiring the conversion of the real estate into more liquid assets is that she has not been receiving satisfactory distribution payments. It appears the reason for this is that the beneficiaries have mounted a legal barrage assailing the trustee and his administration of the trust, at a cost of several thousand dollars in legal fees to the trust assets. Previously, the beneficiaries have shown insignificant merit in their numerous contests of the trustee's accountings. In fact, Bartels has testified in the past that she had no quarrel with the way the trustee was managing the trust. She is only complaining now because her cobeneficiary continues to generate litigation which requires the trust income be drained to defend her actions.

We decline to extend our holding in *Kupfer* to allow conversion of trust property only because it may be beneficial to those currently receiving the trust income. There are no allegations in the petition to convert assets which indicate waste or depreciation in value. The petition basically rests on the theory that litigation expenses, precipitated by the current beneficiaries' legal attacks against the trustee, justify the sale of trust assets. We find no authority for the proposition that legal-expense blackmail by current beneficiaries, by itself, is reason to liquidate an investment. If we did adopt such a view, trustees could not plan for long-time investments, and the wishes of trust settlors as to retention of certain types of investments would be meaningless.

The petition to convert did not make allegations which would justify an order of conversion or reinvestment, and the trial court was correct in dismissing the petition. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) Because of our resolution of this issue, we need not discuss the argument that dismissal of the petition to terminate the trust (Durdle v. Durdle (Mason Co. Cir. Ct., Jan. 19, 1990), No. 83—CH—25 (order of dismissal)), from which no appeal was taken, supports dismissal of the instant petition based on *res judicata* (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(4)).

Affirmed.

GREEN, P.J., and COOK, J., concur.