NORMAN J. BARRY, Ex'r of the Estate of Henry Rafacz, Deceased, and Ex'r of the Estate of Edward Rafacz, Deceased, Plaintiff-Appellant, v. EVE-LYN RAFACZ CARR *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—94—3752

Opinion filed December 13, 1995.—Rehearing denied January 26, 1996.

GREIMAN, P.J., specially concurring.

Roderick J. Bergin, of Bergin & Romberg, of Northbrook, for appellant.

Donald A. Carr and Ronald P. Ernst, both of Carr & O'Rourke Associates, of Chicago, for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Norman J. Barry, executor of the estate of Henry Rafacz, deceased, and executor of the estate of Edward Rafacz, deceased, appeals from the entry of summary judgment in favor of defendants, Melanie Dendor, executor of the estate of Walter Rafacz, deceased, and Evelyn Rafacz Carr. Plaintiff argues that (1) the trial court erred when it ruled that a judicial sale of property could not be ordered; (2) the trial court abused its discretion when it held that plaintiff's cross-motion for summary judgment was untimely; and (3) the trial court erred when it struck plaintiff's affidavit as conclusory. We affirm.

The issue in this case is whether a court in equity should have ordered a judicial sale of farmland held in two trusts because of a deadlock among the four beneficiaries.

Plaintiff sought a declaratory judgment that there existed a business management deadlock among four beneficiaries of two land trusts that defeated the objects of their business arrangement. Plaintiff also sought a judicial sale of all the farmland held by the two trusts.

On October 3, 1957, Andrew and Agnes Rafacz set up a land trust into which they conveyed their real estate as part of an estate plan. Edward Rafacz, Walter Rafacz, Henry Rafacz and Evelyn Rafacz Carr were their children. During their lifetimes Andrew and Agnes conveyed to their children annually in equal amounts a percentage of the land trust equal in value to the annual exclusion for gift taxes. Upon Andrew's death in 1959 he bequeathed his interest in the land trust to the siblings in equal shares. Agnes died in 1978 leaving her estate in equal shares to the siblings.

There presently are two land trusts as a result of a conveyance to a bank to secure a loan. At the time that the amended complaint was filed in June 1994, the four beneficiaries were Evelyn Rafacz Carr; Norman J. Barry, executor of the estate of Edward Rafacz, deceased; Norman J. Barry, executor of the estate of Henry Rafacz, deceased; and Melanie Dendor, executor of the estate of Walter Rafacz, deceased.

The land trusts held two parcels of valuable farmland in Orland Park, Illinois. The first acres sold were in 1972 for a regional shopping center. In 1974 family members entered into an annexation agreement with the Village of Orland Park in which the farmland was rezoned for general business use.

The power of direction in the Heritage Pullman Bank & Trust Company land trust was held by a simple majority of the beneficiaries. The First National Bank of Evergreen Park land trust required unanimous consent of the beneficiaries to direct the land trustee. As a result, the real estate in the Heritage land trust cannot be sold without the majority consent of the beneficiaries, and the real estate in the Evergreen land trust cannot be sold without unanimous consent of the beneficiaries.

The complaint further alleged that attorneys for Carr and Dendor informed plaintiff that their clients had no interest in selling the property. Plaintiff wished to sell the land held in the trusts in order to provide funds to the widows of Edward and Henry and to pay numerous claims filed against Henry's estate, which had no assets other than the 25% beneficial interest. The business object of selling the land at a profit has been frustrated by the refusal to sell. The position produced a business management stalemate that defeated the objects of the beneficiaries' business arrangement according to the complaint.

On June 7, 1994, the court ordered the parties to file any motions for summary judgment prior to August 4, 1994. On August 3, 1994, defendants filed a motion for summary judgment arguing that plaintiff had no right to a judicial sale. On September 1, 1994, plaintiff filed his response to defendants' motion for summary judgment and a cross-motion for summary judgment combined in the same document.

Plaintiff filed his affidavit, and he swore that he was an attorney who had personal knowledge of the matters asserted in the affidavit. He had represented the Rafacz family members since 1955. His clients originally were the parents. Until mid-1985 he handled all land purchase and sale transactions where family members owned property jointly. The land trusts were created to hold and sell

farmland that formerly was owned and farmed by Andrew and Agnes Rafacz. The land trusts were created by Andrew and Agnes in order to benefit their children.

Barry's affidavit stated that it was always the intention to hold and sell the property to a developer for a profit. All of the other property owned by the Rafacz family had been sold for commercial, office or residential development. At the time the parcels were annexed to Orland Park in 1974, the Rafacz family obtained more favorable zoning classifications in order to enhance the value of the property and to further their business purpose in selling it. The 17-acre parcel was zoned retail, and the 44-acre parcel was zoned planned office. Both parcels were immediately adjacent to two regional shopping malls and were surrounded by other commercial and residential developments.

Barry's affidavit further stated that Virginia Rafacz, Henry's widow, did not have any current income other than social security payments, and her current monthly debts exceeded her current monthly income. In April 1994 Virginia's oldest son died; he had provided financial support to his mother.

Defendants moved to strike plaintiff's cross-motion for summary judgment and the affidavit of Barry. Defendants argued that the motion was untimely filed because it was filed after August 4, 1994, and that the affidavit contained conclusions and statements to which the affiant could not testify competently.

On October 14, 1994, the trial court entered an order that struck the affidavit, that denied plaintiff's cross-motion for summary judgment, that granted defendants' motion for summary judgment, and found that there was no just reason to delay enforcement or appeal of the order.

Plaintiff filed a notice of appeal on October 20, 1994.

Plaintiff first argues on appeal that the trial court erred when it ruled that a judicial sale of the Rafacz property could not be ordered despite a 50/50 business management deadlock with respect to selling the property. The trial court failed to consider the balance of equities, and Henry's widow needed the income from the sale. Defendants respond that plaintiff was not entitled to a sale of the property because there was no business, there was no possible management deadlock, and the siblings shared ownership involuntarily as a result of their parents' decision in establishing an estate plan.

Our review of the order disposing of the summary judgment motions is *de novo*. *Jarke v. Jackson Products* (1994), 258 Ill. App. 3d 718, 721, 631 N.E.2d 233.

Judicial sales of beneficial interests in land trusts have been ordered where business owners were in a deadlock over the business' management. (*Regas v. Danigeles* (1964), 54 Ill. App. 2d 271, 369 N.E.2d 380; *Davis v. Kurtz* (1988), 165 Ill. App. 3d 417, 518 N.E.2d 1297.) But cases have refused to order judicial sales where there was no business arrangement. *Prassas v. Nicholas W. Prassas & Co.* (1981), 94 Ill. App. 3d 311, 418 N.E.2d 904; *First Options of Chicago, Inc. v. Stellings* (1991), 215 Ill. App. 3d 1093, 576 N.E.2d 103; *Sajdak v. Sajdak* (1992), 224 Ill. App. 3d 481, 586 N.E.2d 716.

■ The trust agreements dictate the required consent of the beneficiaries needed to direct the land trustees to sell the property. Even if equity could order a judicial sale despite the trust agreements' provisions for consent, the record does not demonstrate that the parties had a business arrangement that was deadlocked. The family members entered into an annexation agreement in which the farmland was rezoned for general business use, but this action does not demonstrate necessarily a business plan. The reason for the rezoning could have been to increase the value when the property was to be ultimately sold at the expiration of the land trusts. The record does not reveal the siblings' intentions concerning the unsold property. The siblings became co-owners not by their own agreement but as a result of their parents' estate plan. The affidavit in support of the cross-motion for summary judgment states that it was always the beneficiaries' intention to hold and sell the property to a developer for a profit, but it does not state whose intention that was or how the affiant determined this intention. There is no evidence that all or the majority of the beneficiaries of the land trusts ever intended to go into business together. Selling the farmland for the highest price does not indicate a business venture. Summary judgment was properly entered in favor of defendants because they were entitled to judgment as a matter of law. (735 ILCS 5/2—1005(d) (West 1992).) There was no issue as to any material fact.

We do not reach the issue whether the trial court abused its discretion when it held that plaintiff's cross-motion for summary judgment was untimely.

■ Plaintiff finally argues that the trial court erred in striking the affidavit as conclusory.

The trial court should not have stricken the entire affidavit because some of the paragraphs could have been based on the personal knowledge of the affiant, who was the attorney for the parents who set up the land trust. (145 Ill. 2d R. 191(a) (affidavits supporting motion for summary judgment shall be made on the affiant's personal knowledge).) But even if the affidavit had not been

stricken, the trial court still would have correctly entered summary judgment in favor of defendants for the reasons stated above.

The judgment of the trial court is affirmed.

Affirmed.

TULLY, J., concurs.

PRESIDING JUSTICE GREIMAN, specially concurring:

I write this concurring opinion only to state that equity ought not necessarily enter at all times where there is a business relationship nor should it be prohibited from entering the decision-making process in all cases where the parties are connected to nonbusiness entities. Citing *First Options of Chicago, Inc. v. Stellings* (1991), 215 Ill. App. 3d 1093, 576 N.E.2d 103, the majority rests its determination of this case on the fact that the parties have not entered into a business arrangement and that equity will only enter the fray where there is a deadlock in the operation of the "business."

While this is convenient to bring this case to conclusion, I am unwilling to concede (1) that the relationship among the Rafacz offspring (and their respective executors) is nonbusiness in character and (2) no matter what the relationship is, there is no "management deadlock" of the nature that requires a court of equity to intervene.

As to the first issue, the parties hold property which is readily salable for development for commercial use. They have participated in the process which provided them with a zoning classification that significantly enhanced the value of the property. A number of years ago they sold some of the property for construction of a shopping center. They also pledged the beneficial interest to obtain funds to pay back real estate taxes. Although their parents established the Heritage Bank trust in 1957, the siblings appear to have established the Bank of Evergreen Park trust in 1977 in a trade of real estate with their mother. *First Options* concerned a residence occupied by one of the owners without any relationship, business or otherwise, between the two owners.

As to the second issue, I do not consider the difficulty encountered by the parties to be "management deadlock." Here, one side believes that it is a propitious time to effect a sale of the subject property while the other group is convinced that it is wiser to hold on to the property. If the court intervenes and decides that it is wise to effect a sale at this time, then the court has chosen one side over the other and ignored the express provisions of the trust instrument.

Here the trust instruments provide that all of the beneficiaries

238

must join as to one of the trusts and a majority of the beneficiaries must join as to the other to direct the respective trustees to convey the trust real estate. Having ascertained the settlors' intent, the court is bound to follow it unless it can be shown that there has been a change in circumstances and that adherence to the instrument's requirements would defeat the settlors' intent. *Durdle v. Durdle* (1992), 223 Ill. App. 3d 964, 585 N.E.2d 1171 (declined to order sale where beneficiary desired sale of property to generate more income).

The settlors of the trusts established the decision-making process and the court should not disturb this arrangement unless faced with a situation where the *res* of the trust is in jeopardy. (*American State Bank v. Kupfer* (1983), 114 Ill. App. 3d 760, 449 N.E.2d 1024.) In *Kupfer*, the settlor required both beneficiaries to approve any sale of the movie theater that was the subject matter of the trust. Only after determining that there was a probability that the property would be lost if the advantageous sale was not accepted did the court intervene to direct the sale of the property. *Kupfer*, 114 Ill. App. 3d 760, 449 N.E.2d 1024.

Generally, the settlor desired that the *res* of the trust be protected. Thus, upon a showing that the *res* is at risk, a court of equity could intervene. To illustrate, if the property was to be lost for the nonpayment of real estate taxes because the parties could not agree to their payment or there could be no agreement on the securing of insurance or if the parties could not agree on a course of action in the face of a threatened downzoning, equitable relief would probably be forthcoming. Moreover, the General Assembly has authorized intervention where an interest in land is subject to a future interest or a power of appointment and there is evidence that the "lands or estate are liable to waste or depreciation in value." 760 ILCS 5/17.1 (West 1992).

No such showing has been made in this case. Perhaps the stand-patters are right and it is not a good time to sell. There may be other reasons not to sell. For example, if the Internal Revenue Service is to value the interests of the parties for the purpose of calculating the Federal estate tax payable, a lower valuation will obtain if the interests are of a percentage of the property rather than an appraisal of the whole property.

The plaintiff has sought to show the sorry financial condition of one of the plaintiffs. However, both *Kupfer* and *Durdle* had similar issues presented and both courts rejected the notion that the financial condition of the beneficiary could require the sale of trust property in contravention of the terms of the trust agreement.

The battle of the Rafacz siblings and their heirs is just beginning!

This is only the second appellate court decision for this family. The battle will continue even though only one of the original combatants remains alive. But now an observation that will probably sadden the participants and their counsel. It all comes to an end by 1998. The Heritage Bank trust terminates on October 3, 1997, and the Bank of Evergreen Park trust terminates on October 3, 1998. Both trust instruments provide:

"If any property remains in this trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement."

It should be comforting to the parties to know that if they are unable to come to some sort of agreement, the respective banks will sell their property.